# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| HALLEY ASCHER, *et al.*, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>  v.<br><br>ROBERT BOSCH GMBH and ROBERT BOSCH LLC,<br><br>          Defendants. | Master File No. 2:12-md-02311<br><br>Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br><u>JURY TRIAL DEMANDED</u> |
| IN RE ELECTRONIC BRAKING SYSTEMS | |

Plaintiffs Halley Ascher, Gregory Asken, Melissa Barron, Tenisha Burgos, Jane Butler, Nathan Croom, Lori Curtis, Jessica Normile, Theresia Dillard, Jane Fitzgerald, Carroll Gibbs, Dori Gilels, Ian Groves, Curtis Gunnerson, Tom Halverson, Curtis Harr, Andrew Hedlund, Gary Arthur Herr, John Hollingsworth, Elizabeth Kaufman, Robert Klingler, Bonnie Vander Meulen, Rebecca Lynn Morrow, Edward Muscara, Stacey Nickell, Roger Olson, James Phelps, William Picotte, Whitney Porter, Cindy Prince, Frances Gammell-Roach, Darrel Senior, Erica Shoaf, Kathleen Tawney, Jane Taylor, and Keith Uehara ("Plaintiffs"), on behalf of themselves and all others similarly situated (the "Classes" as defined below), upon personal knowledge as to the facts pertaining to themselves and upon information and belief as to all other matters, and based on the investigation of counsel, bring this class action for damages, injunctive relief, and other relief pursuant to federal antitrust laws and state antitrust, unfair competition, consumer protection, and unjust enrichment laws. Plaintiffs demand a jury trial and allege as follows:

## NATURE OF ACTION

1.      This lawsuit is brought as a proposed class action against Defendants Robert Bosch GmbH and Robert Bosch LLC  (together, "Bosch" or "Defendants")[1], named co-conspirators Continental AG, Continental Teves AG & Co. oHG, Continental Automotive GmbH, and Continental Automotive Systems, Inc. (together, "Continental") and unnamed co-conspirators, manufacturers, and/or suppliers of Electronic Braking Systems (defined below) globally and in the United States, for engaging in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Electronic Braking Systems. According to the United States Department of Justice

---

[1] At the time of this filing, Plaintiffs have settled with Bosch.

("DOJ"), the automotive parts conspiracies successfully targeted the long-struggling United States automotive industry, raising prices for automobile manufacturers and consumers alike.

2.      Plaintiffs seek to represent all persons and entities who, during the period from and including September 29, 2010 through such time as the anticompetitive effects of Defendants' conduct ceased ("Class Period"), purchased or leased a new four-wheeled passenger automobile, van, sports utility vehicle, crossover, or pickup truck ("Vehicle") in the United States not for resale which included one or more Electronic Braking System as a component part, which were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

3.      Braking systems are an essential input for car manufacturers and there are two main braking systems available: Electronic Braking Systems—the subject of this complaint—and hydraulic braking systems. Both systems are made up of additional component parts. Electronic Braking Systems prevent cars from skidding by providing electronic stability controls when braking (anti-lock braking system or "ABS") or under all driving conditions (electronic stability control or "ESC"). Hydraulic braking systems consist of an actuation system and a foundation system. The actuation system is further made up of a brake booster and main brake cylinder, while the foundation system is further made up of a disc brake with saddle or drum brake and wheel brake cylinder. Both Electronic Braking Systems and hydraulic braking systems can be contained within the same vehicle.

4.      Defendants manufacture, market, and/or sell Electronic Braking Systems throughout and into the United States. Defendants and their co-conspirators agreed, combined, and conspired to fix, raise, maintain and/or stabilize prices, rig bids, and allocate the market and customers in the United States for Electronic Braking Systems.

5.      The DOJ's Antitrust Division conducted a broad criminal investigation into illegal price-fixing and bid-rigging in the automotive parts industry. As part of its criminal investigation, the DOJ sought information about unlawful anticompetitive conduct in the market for a number of different but related automotive parts, and the Federal Bureau of Investigation ("FBI") has participated in raids, pursuant to search warrants, carried out in the offices of a number of major competitors in the automotive parts industry. The automotive parts investigation is the largest criminal investigation the Antitrust Division has ever pursued, both in terms of its scope and its impact on American consumers and businesses. This cartel investigation of price-fixing and bid-rigging in the automotive parts industry yielded more than $2.9 billion in criminal fines. The European Commission's ("EC") Directorate General for Competition ("DG Competition") has also conducted dawn raids at the European offices of several automotive parts manufacturers.

6.      On July 13, 2011, TRW applied to the EC for immunity with respect to contacts it had with Bosch regarding sales of hydraulic braking systems to Daimler. Subsequently, on November 24, 2011, Bosch submitted a similar application in connection with contacts with TRW and Continental regarding sales of hydraulic braking systems to Daimler. Finally, in September 2014, the EC carried out inspections of Continental's premises related to the hydraulic braking systems conspiracy, leading Continental to submit its own leniency application on December 9, 2014 in connection with contacts between Continental, TRW, and Bosch regarding sales of hydraulic braking systems to Daimler and BMW and contacts with Bosch regarding sales of Electronic Braking Systems to VW.

7.      On February 21, 2018, the EC concluded that TRW, Continental, and Bosch violated EU competition law by exchanging information with the aim of coordinating their respective market behaviors, including pricing practices.

8.     Defendants and their co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate the supply of, rig bids for, and to fix, stabilize, and maintain the prices of Electronic Braking Systems sold to Vehicle manufacturers and others in the United States and globally. The combination and conspiracy engaged in by Defendants and their co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Act, 15 U.S.C. § 1, and state antitrust, unfair competition, consumer protection, and unjust enrichment laws.

9.     According to the Commission Decision issued by the EC's DG Competition, Defendants and their co-conspirators participated in a set of agreements and concerted practices concerning the exchange of sensitive business information for the purposes of reducing competitive uncertainty in the area of sales of Electronic Braking System through:

(a)     Participating in meetings and phone conversations to exchange competitively sensitive business information regarding Electronic Braking Systems following the issuance of Requests for Quotation ("RFQs") for the VW's MLB evo-platform[2];

(b)     Discussing, during those meetings and phone conversations, their interest in the contract for VW's MLB evo-platform;

(c)     Disclosing, during those meetings and phone conversations, their intentions for VW's MLB evo-platform;

(d)     Exchanging, during those meetings and phone conversations, competitively sensitive business information on their respective offers;

---

[2] This platform is used to produce certain Audi models and the Porsche Macan.

(e)     Exchanging, during those meetings and phone conversations, information with a view of reducing competitive uncertainty for the Defendants' supplies of Electronic Braking Systems to VW for the MLB evo-platform.

10.     As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiffs and the Classes (as defined below) paid artificially inflated prices for Electronic Braking Systems during the Class Period and have thereby suffered antitrust injury to their business or property.

## JURISDICTION AND VENUE

11.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, consumer protection, and unjust enrichment laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violations of those state laws. Plaintiffs and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law.

12.     This Court has jurisdiction over the subject matter of this action pursuant to Section 16 of the Clayton Act (15 U.S.C. § 26), Section 1 of the Sherman Act (15 U.S.C. § 1), and Title 28, United States Code, Sections 1331 and 1337. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that: (1) this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some members of the proposed Classes are citizens of a state different from Defendants; and (2) Plaintiffs' state law claims form part of the same case or controversy as their federal claims under Article III of the United States Constitution.

13.     Venue is proper in this District pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22), and 28 U.S.C. §§ 1391 (b), (c), and (d), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and Defendants reside, are licensed to do business in, are doing business in, have agents in, and are found in or transact business in this District.

14.     This Court has *in personam* jurisdiction over Defendants because Defendants either directly or through the ownership and/or control of their subsidiaries, *inter alia*: (a) transacted business in the United States, including in this District; (b) directly or indirectly sold or marketed substantial quantities of Electronic Braking Systems throughout the United States, including in this District; (c) had substantial aggregate contacts with the United States as a whole, including in this District; and (d) were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants also conduct business throughout the United States, including in this jurisdiction, and they have purposefully availed themselves of the laws of the United States.

15.     Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States.

16.     The activities of Defendants and their co-conspirators directly targeted the United States Vehicle market and were within the flow of, were intended to, and did have, a substantial

effect on interstate commerce of the United States. Defendants' products are sold in the flow of interstate commerce.

17.     Electronic Braking Systems manufactured abroad by Defendants and sold for use in Vehicles in the United States are goods brought into the United States for sale, and therefore constitute import commerce. To the extent any Electronic Braking Systems are purchased in the United States, and such Electronic Braking Systems do not constitute import commerce, Defendants' activities with respect thereto, as more fully alleged herein during the Class Period, had, and continue to have, a direct, substantial and reasonably foreseeable effect on United States commerce. The anticompetitive conduct, and its effect on United States commerce described herein, proximately caused antitrust injury to Plaintiffs and members of the Classes in the United States.

18.     By reason of the unlawful activities hereinafter alleged, Defendants' unlawful activities substantially affected commerce throughout the United States, causing injury to Plaintiffs and members of the Classes. Defendants directly and through their agents, engaged in activities affecting all states, to fix, raise, maintain and/or stabilize prices, rig bids and allocate the market and customers in the United States for Electronic Braking Systems, which conspiracy unreasonably restrained trade and adversely affected the market for Electronic Braking Systems.

19.     Defendants' conspiracy and wrongdoing described herein adversely affected persons in the United States who purchased or leased a new Vehicle in the United States not for resale which included one or more Electronic Braking Systems.

## PARTIES

### Plaintiffs

20.     Plaintiff Halley Ascher is a District of Columbia resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

21.     Plaintiff Gregory Asken is a Nevada resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

22.     Plaintiff Melissa Barron is a California resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

23.     Plaintiff Tenisha Burgos is a New York resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

24.     Plaintiff Jane Butler is a Wisconsin resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

25.     Plaintiff Nathan Croom is a Nebraska resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

26.     Plaintiff Lori Curtis is a Missouri resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

27.     Plaintiff Jessica Normile is a Missouri resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

28.     Plaintiff Theresia Dillard is a Mississippi resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

29.     Plaintiff Jane Fitzgerald is a Vermont resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

30.     Plaintiff Carroll Gibbs is a District of Columbia resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

31.     Plaintiff Dori Gilels is a Montana resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

32.    Plaintiff Ian Groves is a New Mexico resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

33.    Plaintiff Curtis Gunnerson is a Minnesota resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

34.    Plaintiff Tom Halverson is an Arizona resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

35.    Plaintiff Curtis Harr is a North Dakota resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

36.    Plaintiff Andrew Hedlund is a South Carolina resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

37.    Plaintiff Gary Arthur Herr is a Florida resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

38.    Plaintiff John Hollingsworth is a California resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

39.    Plaintiff Elizabeth Kaufman is a Florida resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

40.    Plaintiff Robert Klingler is a Missouri resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

41.    Plaintiff Bonnie Vander Meulen is a Wisconsin resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

42.    Plaintiff Rebecca Lynn Morrow is an Arizona resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

43.     Plaintiff Edward Muscara is a New Hampshire resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

44.     Plaintiff Stacey Nickell is a West Virginia resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

45.     Plaintiff Roger Olson is a Michigan resident who purchased at least one Electronic System indirectly from Defendants or their co-conspirators.

46.     Plaintiff James Phelps is a Maine resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

47.     Plaintiff William Picotte is a former South Dakota resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

48.     Plaintiff Whitney Porter is a District of Columbia resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

49.     Plaintiff Cindy Prince is a California resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators while a resident of Langlois, Oregon.

50.     Plaintiff Frances Gammell-Roach is a Rhode Island resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

51.     Plaintiff Darrel Senior is a Kansas resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

52.     Plaintiff Erica Shoaf is an Arizona resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

53.     Plaintiff Kathleen Tawney is a North Carolina resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

54.     Plaintiff Jane Taylor is a Hawaii resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

55.     Plaintiff Keith Uehara is a Hawaii resident who purchased at least one Electronic Braking System indirectly from Defendants or their co-conspirators.

## Defendants

56.     When Plaintiffs refer to a corporate family or companies by a single name in the Complaint, they are alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family. The individual participants in the conspiratorial acts did not always know the corporate affiliation of their counterparts, nor did they distinguish between the entities within a corporate family. The individual participants entered into agreements on behalf of their respective corporate families. As a result, those agents represented the entire corporate family with respect to such conduct, and the corporate family was party to the agreements that those agents reached.

## Bosch Defendants

57.     Defendant Robert Bosch GmbH is a German corporation with its principal place of business in Gerlingen, Germany. During the class period, Defendant Robert Bosch GmbH – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District.

58.     Defendant Robert Bosch LLC is a Delaware corporation with its principal place of business at 38000 Hills Tech Drive, Farmington Hills, Michigan. On information and belief, it is a subsidiary and wholly owned and/or controlled by its parent, Robert Bosch GmbH. On information and belief, Defendant Robert Bosch LLC manufactured, marketed and/or sold

11

Electronic Braking Systems that were sold and purchased throughout the United States, including in this District, during the Class Period.

## AGENTS AND CO-CONSPIRATORS

59.     Defendants acted as the principals of or agents for the unnamed co-conspirators with respect to the acts, violations, and common course of conduct alleged herein.

60.     Various persons, partnerships, sole proprietors, firms, corporations and individuals not named as defendants in this lawsuit, and individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

61.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation or limited liability entity, the allegation means that the corporation or limited liability entity engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's or limited liability entity's business or affairs.

### Continental Co-Conspirators

62.     Co-Conspirator Continental AG is a German corporation with its principal place of business in Hannover, Germany. During the class period, Continental AG – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District.

63.     Co-Conspirator Continental Teves AG & Co. oHG is a German corporation with its principal place of business in Frankfurt, Germany. On information and belief, it is a subsidiary and wholly owned and/or controlled by its parent, Continental AG. On information and belief,

Continental Teves AG & Co. oHG manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District, during the Class Period. On information and belief, at all times during the Class Period, Continental Teves AG & Co. oHG's activities in the United States were under the control and direction of its German parent.

64. Co-Conspirator Continental Automotive GmbH is a German corporation with its principal place of business in Hannover, Germany. On information and belief, it is a subsidiary and wholly owned and/or controlled by its parent, Continental AG. On information and belief, Continental Automotive GmbH manufactured, marketed and/or sold Electronic Braking Systems that were sold and purchased throughout the United States, including in this District, during the Class Period. On information and belief, at all times during the Class Period, Continental Automotive GmbH's activities in the United States were under the control and direction of its German parent.

65. Co-Conspirator Continental Automotive Systems, Inc. is a Delaware company with its principal place of business in Auburn Hills, Michigan. It is an affiliate of and wholly controlled by its parent, Continental AG. Continental Automotive Systems, Inc. – directly and/or through its subsidiaries, which it wholly owned and/or controlled – manufactured, marketed and/or sold Electronic Braking Systems that were purchased throughout the United States, including in this District, during the Class Period.

## FACTUAL ALLEGATIONS

### A.    The Braking Systems Industry

66. Braking systems are an essential input for car manufacturers. The two most common systems available are Electronic Braking Systems and hydraulic braking systems, both of which consist of various component parts.

67.     Electronic Braking Systems prevent cars from skidding by providing electronic stability controls when braking (ABS) or under all driving conditions (ESC). Hydraulic braking systems consist of an actuation system and a foundation system. The actuation system is further made up of a brake booster and main brake cylinder, while the foundation system is made up of a disc brake with saddle or drum brake and wheel brake cylinder. Both Electronic Braking Systems and hydraulic braking systems can be contained within the same vehicle.

68.     Electronic Braking Systems are installed by OEMs in Vehicles as part of the automotive manufacturing process.

69.     For Vehicles, the OEMs – mostly large automotive manufacturers such as Daimler, BMW, and VW – purchase Electronic Braking Systems directly from Defendants and/or their co-conspirators. Electronic Braking Systems may also be purchased by component manufacturers who then supply such systems to OEMs. These component manufacturers are also called "Tier 1 Manufacturers" in the industry. Tier 1 Manufacturers supply Electronic Braking Systems directly to an OEM.

70.     When purchasing Electronic Braking Systems, OEMs issue RFQs to automotive parts suppliers on a model-by-model basis for model specific parts. Automotive parts suppliers submit quotations, or bids, to OEMs in response to RFQs, and the OEMs usually award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production, and Electronic Braking Systems are developed over a year in advance of a Vehicle entering the market. OEMs procure Electronic Braking Systems and other parts for U.S.-manufactured Vehicles in the United States and elsewhere.

71.    Defendants and their co-conspirators supplied Electronic Braking Systems to OEMs for installation in Vehicles sold in the United States and elsewhere.

72.    Plaintiffs and members of the proposed Classes purchased Electronic Braking Systems indirectly from one or more of Defendants and their co-conspirators. By way of example, an owner of a Vehicle may indirectly purchase one or more Electronic Braking System from Defendants or their co-conspirators as part of purchasing or leasing a new Vehicle.

### (a)    The Structure and Characteristics of the Electronic Braking Systems Market Render the Conspiracy More Plausible.

73.    The Electronic Braking Systems market in the United States is conducive to a price-fixing agreement because of its structure and other characteristics, which have made collusion particularly attractive in this market. Specifically, the Electronic Braking Systems market: (1) has high barriers to entry and (2) has inelasticity of demand.

### (i)    The Electronic Braking Systems Market Has High Barriers to Entry.

74.    A collusive arrangement that raises product prices above competitive levels would, under basic economic principles, attract new entrants seeking to benefit from the supra-competitive pricing. Where, however, there are significant barriers to entry, new entrants are less likely to enter the market. Thus, barriers to entry help to facilitate the formation and maintenance of a cartel.

75.    There are substantial barriers that preclude, reduce, or make more difficult entry into the Electronic Braking Systems market. A new entrant into the business would face costly and lengthy start-up costs, including multi-million-dollar costs associated with manufacturing plants and equipment, energy, transportation, distribution infrastructure, skilled labor, and long-standing customer relationships.

### (ii)    There is Inelasticity of Demand for Electronic Braking Systems.

76.     "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. For example, demand is said to be "inelastic" if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any. In other words, customers have nowhere to turn for alternative, cheaper products of similar quality, and so continue to purchase despite a price increase.

77.     For a cartel to profit from raising prices above competitive levels, demand must be relatively inelastic at competitive prices. Otherwise, increased prices would result in declining sales, revenues, and profits, as customers purchased substitute products or declined to buy altogether. Inelastic demand is a market characteristic that facilitates collusion, allowing producers to raise their prices without triggering customer substitution and lost sales revenue.

78.     Demand for Electronic Braking Systems is highly inelastic because there are no close substitutes for these products. In addition, customers must purchase Electronic Braking Systems as an essential part of a Vehicle, even if the prices are kept at a supra-competitive level.

**B.      Government Investigations**

79.     A globally coordinated antitrust investigation took place in the United States, Europe, Canada, and Japan, aimed at suppliers of automotive parts in general. A Japan Fair Trade Commission official initially told a leading legal publication that the international automotive parts supplier investigation would continue to widen because the automotive industry as a whole comprises many sub-industries. He characterized the investigations being conducted by international antitrust authorities at the time as "large and broad," and he declined to deny that this "would be history's largest case."

80.     The antitrust probe originated in Europe as the result of several European OEMs coming together to bring a complaint to the EC. The EC and the FBI executed surprise raids at the

European and U.S. offices of several automotive parts manufacturers as part of an investigation into anticompetitive conduct related to the manufacturing and sale of automotive parts.

81. On February 8, 2010, the EC executed surprise raids at the European offices of certain automotive parts makers. The DOJ has confirmed that its automotive parts investigation is the largest criminal investigation that the Antitrust Division has ever pursued, both in terms of its scope and the potential volume of commerce affected by the illegal conduct. To date, as a result of its widespread investigation, the DOJ has charged more than 100 individuals and companies with criminal antitrust violations and the DOJ has levied, to date, more than $2.9 billion in criminal fines against various automotive parts manufacturers.

### C. Existence of Cooperating Defendants in Foreign Investigations

82. The EC provides immunity under the Commission Notice on immunity from fines and reduction of fines in cartel cases ("Leniency Notice").[3] On July 13, 2011, TRW applied for such immunity in respect to bilateral contacts it had with Bosch regarding sales of braking systems to Daimler.

83. On November 24, 2011, Bosch submitted an application under the Leniency Notice in connection to bilateral contacts with TRW and Continental regarding sales of hydraulic braking systems to Daimler. Based on this information, the EC carried out inspections of Continental's premises related to the hydraulic braking systems conspiracy in September 2014.

84. On December 9, 2014, Continental submitted a leniency application revealing contacts with Bosch regarding sales of Electronic Braking Systems to VW, as well as bilateral contacts with TRW and Bosch regarding sales of hydraulic braking systems to Daimler and BMW.

---

[3] Commission Notice on immunity from fines and reduction of fines in cartel cases, OJ C 298, 8.12.2006, p. 17.

85.     On February 21, 2018, the EC concluded that Bosch and Continental violated EU competition law by exchanging information with the aim of coordinating their respective market behaviors, including pricing practices. For the Electronic Braking Systems conspiracy, Bosch was fined €19,348,000. Continental, having successfully fulfilled its cooperation requirements as the immunity applicant, was granted immunity from fines. For the hydraulic braking systems conspiracy, Bosch and Continental were each fined €12,072,00 and €44,006,000, respectively, while TRW received immunity from fines for successfully fulling its immunity applicant obligations.

D.      **Additional Criminal Pleadings in the Automotive Parts Industry**

86.     On September 29, 2011, the DOJ announced that Furukawa Electric Co. Ltd. agreed to plead guilty and pay a $200 million criminal fine for its role in a criminal price-fixing and bid-rigging conspiracy involving the sale of automotive wire harnesses and related products to automobile manufacturers.

87.     In the press release announcing the fine against Furukawa Electric Co. Ltd., Sharis A. Pozen, then the Acting Assistant Attorney General in charge of the DOJ's Antitrust Division, said that "[a]s a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers." Ms. Pozen also stated that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped." The press release also quoted FBI's Special Agent in Charge Andrew G. Arena, who said that "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system," and that "[t]he FBI is committed to aggressively pursuing any company involved in antitrust crimes."

88.     On January 30, 2012, the DOJ announced that Yazaki Corporation agreed to plead guilty and pay a $470 million criminal fine and DENSO Corporation agreed to plead guilty and pay a $78 million criminal fine for their respective involvement in multiple price-fixing and bid-rigging conspiracies in the sale of automotive parts to automobile manufacturers in the United States. According to the three-count criminal Information filed against Yazaki, it engaged in three separate conspiracies: (i) to rig bids for and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to certain automobile manufacturers in the United States and elsewhere; (ii) to rig bids for and to fix, stabilize, and maintain the prices of, instrument panel clusters ("IPCs") sold to certain automobile manufacturers in the United States and elsewhere; and (iii) to fix, stabilize, and maintain the prices of fuel senders sold to an automobile manufacturer in the United States and elsewhere. According to the two-count felony charge against DENSO Corporation, it engaged in conspiracies to rig bids for, and to fix, stabilize, and maintain the prices of, electronic control units ("ECUs") and heater control panels ("HCPs") sold to an automobile manufacturer in the United States and elsewhere.

89.     In the press release announcing the fines against Yazaki Corporation, its executives, and DENSO Corporation, Ms. Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ." In the same press release, Special Agent in Charge Andrew G. Arena said that "[t]his criminal activity has as significant impact on the automotive manufacturers in the United States, Canada, Japan and Europe and has been occurring for at least a decade. The conduct has also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold[.]"

90.     Ms. Pozen said there is no doubt **consumers** were hurt financially by the automotive wire harness price-fixing conspiracy. She stated: "By rigging bids on wiring harnesses

. . . the three companies inflated what some of their auto manufacturer clients paid, and indirectly, what consumers paid for some cars."

91.     On April 3, 2012, the DOJ announced that G.S. Electech Inc. agreed to plead guilty and pay a $2.75 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, speed sensor wire assemblies used on antilock brake systems sold to an automobile manufacturer in the United States and elsewhere.

92.     On April 23, 2012, the DOJ announced that Fujikura Ltd. agreed to plead guilty and pay a $20 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, automotive wire harnesses and related products sold to an automobile manufacturer in the United States and elsewhere.

93.     On June 6, 2012, the DOJ announced that Autoliv Inc. agreed to plead guilty to a two-count criminal Information and pay a $14.5 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by (i) agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts sold to a Japanese automobile manufacturer; and (ii) agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, certain seatbelts, airbags, and/or steering wheels sold to a Japanese automobile manufacturer.

94.     On July 30, 2012, the DOJ announced that TRW Deutschland Holding GmbH agreed to plead guilty and pay a $5.1 million criminal fine for its involvement in a combination and conspiracy, through its employees, including high level employees of its wholly-owned subsidiaries, to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of seatbelts, airbags and steering wheels sold to two German automobile manufacturers in the United States and elsewhere.

95.     On August 28, 2012, the DOJ announced that Nippon Seiki Co. Ltd. agreed to plead guilty and pay a $1 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, IPCs sold to an automobile manufacturer in the United States and elsewhere.

96.     On October 30, 2012, the DOJ announced that Tokai Rika Co. Ltd. agreed to plead guilty and pay a $17.7 million criminal fine for its involvement in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of, HCPs sold to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc. in the United States and elsewhere. Tokai Rika also agreed to plead guilty to a charge of obstruction of justice related to the investigation of the antitrust violation.

97.     On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in the Antitrust Division, discussed the DOJ's ongoing automotive parts investigation in a Thomson Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. *I say the biggest with respect to the __impact__ on U.S. businesses and __consumers__, and the number of companies and executives that are subject to the investigation.*" (emphasis added).

98.     On July 16, 2013, the DOJ announced that Diamond Electric Mfg. Co. Ltd. agreed to plead guilty and pay a $19 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, ignition coils sold to automobile manufacturers in the United States and elsewhere.

99.     In the press release announcing the fine against Diamond Electric Mfg. Co. Ltd., Robert D. Foley III, Agent in Charge, FBI Detroit Division said "[t]hose who engage in price fixing, bid rigging and other fraudulent schemes harm the automotive industry by driving up costs for vehicle makers and buyers."

100.    On July 18, 2013, Panasonic Corporation agreed to plead guilty and pay a $45.8 million criminal fine for its role in a conspiracy to fix prices of various automotive parts including high intensity discharge ("HID") ballasts, switches and steering angle sensors installed in automobiles sold in the United States and elsewhere.

101.    On September 26, 2013, nine additional Japanese automotive suppliers agreed to plead guilty to conspiracy charges and pay more than $740 million in criminal fines for their roles in rigging the prices of more than 30 different products:

> (a)     Hitachi Automotive Systems Ltd. agreed to plead guilty and pay a $195 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of automotive parts, including, among others, air flow meters, fuel injection systems, electronic throttle bodies, and inverters, sold to automobile manufacturers in the United States and elsewhere;
>
> (b)     Mitsuba Corporation agreed to plead guilty and pay a $135 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere. Mitsuba Corporation's plea agreement defined "automotive parts" to include windshield wiper systems, windshield washer systems, starter motors, power window motors, fan motors, radiator fans, door mirrors, lamps, power seat motors, sunroof, door and tailgate motors, electric power

steering motors, electronic throttle motors, horns, automotive electric relays and switches, automotive electric actuators, AC generations, and fuel pumps. Mitsuba also agreed to plead guilty to one count of obstruction of justice because of the company's efforts to destroy evidence ordered by a high-level U.S.-based executive after learning of the U.S. investigation of collusion in the automotive parts industry;

(c)     Mitsubishi Electric Corporation agreed to plead guilty and pay a $190 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of certain automotive parts sold to automobile manufacturers in the United States and elsewhere. For purposes of Mitsubishi Electric Corporation's plea agreement, "automotive parts" are defined to include, AC generators, air bag sensors, electronic control units, exhaust gas recirculation valves, fuel injectors, fuel pumps, HID ballasts, ignition coils, integrated units, keyless entry systems, MAP sensors, purge control valves, starter motors, throttle bodies, variable cam timing, and variable valve timing;

(d)     Mitsubishi Heavy Industries Ltd. agreed to plead guilty and pay a $14.5 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of compressors and condensers sold to automobile manufacturers in the United States and elsewhere;

(e)     T.RAD Co. Ltd. agreed to plead guilty and pay a $13.75 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, stabilize and maintain the prices of radiators and automatic transmission fluid warmers ("ATF warmers") sold to automobile manufacturers in the United States and elsewhere;

(f)      Valeo Japan Co. Ltd. agreed to plead guilty and pay a $13.6 million criminal fine for its participation in a conspiracy to allocate the supply of, rig bids for, and to fix, stabilize and maintain the prices of air conditioning systems sold to automobile manufacturers in the United States and elsewhere;

(g)      JTEKT Corporation agreed to plead guilty and pay a $103.27 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings and electric powered steering assemblies sold to automobile manufacturers in the United States and elsewhere;

(h)      NSK Ltd. agreed to plead guilty and pay a $68.2 million criminal fine for its participation in a conspiracy to allocate markets, to rig bids for, and to fix, stabilize and maintain the prices of bearings sold to an automobile manufacturer in the United States and elsewhere; and

(i)      Yamashita Rubber Co. Ltd. agreed to plead guilty and to pay an $11 million criminal fine for its participation in a conspiracy to rig bids for, and to fix, raise and maintain the prices of automotive anti-vibration rubber products sold in the United States and elsewhere to automobile manufacturers.

102.    On the same day, September 26, 2013, then United States Attorney General Eric Holder presented the DOJ's most recent findings in the ongoing automotive parts investigation. He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers. In total, more than 25 million cars purchased by American consumers were affected by the illegal conduct." Then Attorney General Holder also described how the conspiracies worked: "[c]ompany executives met face to face in the United

States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal conduct secret, they used code names and met in remote locations. Then they followed up with each other regularly to make sure the collusive agreements were being adhered to." Then Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing, U.S. businesses and U.S. consumers. As a result of these conspiracies, Americans paid more for their cars."

103.   The diagram below, which was prepared by the DOJ, illustrates the September 26, 2013 guilty pleas and the corresponding automotive parts to which the various manufacturers have admitted price-fixing.



104.    On October 9, 2013, Takata Corporation announced that it agreed to pay $71.3 million to settle antitrust charges brought by the United States federal prosecutors for its role in a conspiracy to price-fix seatbelts.

105.    On November 26, 2013, the DOJ announced that Toyo Tire & Rubber Co. Ltd. agreed to plead guilty and pay a $120 million criminal fine for its role in two separate conspiracies. Toyo Tire & Rubber Co. Ltd. engaged in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, raise, and maintain the prices of, automotive anti-vibration rubber products sold to Toyota Motor

Corporation, Nissan Motor Corporation, Fuji Heavy Industries, Ltd., and certain of their subsidiaries, affiliates and suppliers in the United States and elsewhere, and by agreeing to allocate sales of, and to fix, raise, and maintain the prices of, automotive constant-velocity-joint boot products sold to GKN plc and its subsidiaries in the United States and elsewhere.

106.    On November 27, 2013, the DOJ announced that Stanley Electric Co. Ltd. agreed to plead guilty and pay a $1.44 million criminal fine for its participation in a conspiracy to fix prices of automotive HID lamp ballasts installed in automobiles sold in the United States and elsewhere.

107.    On January 16, 2014, the DOJ announced that Koito Manufacturing Co. Ltd. agreed to plead guilty and pay a $56.6 million criminal fine for its roles in separate price-fixing conspiracies involving automobile lighting fixtures and automotive HID lamp ballasts installed in cars sold in the United States and elsewhere.

108.    On February 3, 2014, the DOJ announced that Aisan Industry Co. Ltd. agreed to plead guilty and pay a $6.86 million criminal fine for its role in a price-fixing conspiracy involving electronic throttle bodies sold to an automobile manufacturer in the United States and elsewhere.

109.    On February 13, 2014, the DOJ announced that Bridgestone Corp. agreed to plead guilty and pay a $425 million criminal fine for its role in a conspiracy to fix prices of automotive anti-vibration rubber parts installed in automobiles sold in the United States and elsewhere.

110.    On April 23, 2014, the DOJ announced that Showa Corp. agreed to plead guilty and pay a $19.9 million criminal fine for its role in a conspiracy to fix prices and rig bids for pinion-assist type electric powered steering assemblies installed in cars sold in the United States and elsewhere.

111.    On August 19, 2014, the DOJ announced that NGK Sparkplug Co. Ltd. agreed to plead guilty and pay a $52.1 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, standard oxygen sensors, and air fuel ratio sensors installed in cars sold to automobile manufacturers in the United States and elsewhere.

112.    On September 29, 2014, the DOJ announced that Toyoda Gosei Co. Ltd. agreed to plead guilty and to pay a $26 million criminal fine for its involvement in a combination and conspiracy to suppress competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain automotive hoses sold to Toyota in the United States and by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of, automotive airbags and steering wheels sold to Subaru and Toyota in the United States and elsewhere.

113.    On October 31, 2014, the DOJ announced that Hitachi Metals Ltd. agreed to plead guilty and pay a $1.25 million criminal fine for its role in a conspiracy to suppress competition in the automotive parts industry by agreeing to allocate sales of, rig bids for, and to fix, raise, and maintain the prices of automotive brake hoses installed in automobiles sold in the United States and elsewhere.

114.    On November 13, 2014, the DOJ announced that Aisin Seiki Co. Ltd. agreed to plead guilty and pay a $35.8 million criminal fine for its role in a conspiracy to allocate customers of variable valve timing devices installed in cars sold to automobile manufacturers in the United States and elsewhere.

115.    On November 24, 2014, the DOJ announced that Continental Automotive Electronics LLC and Continental Automotive Korea Ltd. agreed to plead guilty and pay a criminal

fine of $4 million for their roles in a conspiracy to rig bids of IPCs installed in vehicles manufactured and sold in the United States.

116.    On January 27, 2015, the DOJ announced that Sanden Corp. agreed to plead guilty and pay a $3.2 million criminal fine for its participation in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to fix, stabilize, and maintain the prices of compressors sold to Nissan in the United States and elsewhere.

117.    On March 31, 2015, the DOJ announced that Robert Bosch GmbH agreed to plead guilty and to pay a $57.8 million criminal fine for its role in a conspiracy to fix prices and rig bids for spark plugs, oxygen sensors and starter motors sold to automobile and internal combustion engine manufacturers in the United States and elsewhere.

118.    On April 28, 2015, the DOJ announced that Yamada Manufacturing Co., Ltd. agreed to plead guilty and to pay a $2.5 million criminal fine for its role in a conspiracy to rig bids for, and to fix, stabilize, and maintain the prices of steering columns sold to certain subsidiaries of Honda Motor Co., Ltd., in the United States and elsewhere, from at least as early as the fall of 2007 and continuing until as late as September 2012, in violation of the Sherman Act, 15 U.S.C. § 1.

119.    On September 3, 2015, the DOJ announced that NGK Insulators Ltd. agreed to plead guilty and to pay a $65.3 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of ceramic substrates for automotive catalytic converters supplied to automobile manufacturers in the United States and elsewhere. The company also agreed to plead guilty to obstruction of justice for altering, destroying or concealing documents with the intent to impede the criminal antitrust investigation.

120.     On September 16, 2015, the DOJ announced that Kayaba Industries Co. Ltd. d/b/a KYB Corporation agreed to plead guilty and to pay a $62 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate markets, rig bids for, and to fix, stabilize, and maintain the prices of shock absorbers sold to certain automobile and motorcycle manufacturers in the United States and elsewhere.

121.     On November 19, 2015, the DOJ announced that INOAC Corp. agreed to plead guilty and to pay a $2.35 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of certain plastic interior trim automotive parts sold to Toyota in the United States and elsewhere.

122.     On March 17, 2016, the DOJ announced that Omron Automotive Electronics Co., Ltd. agreed to plead guilty and to pay a $4.55 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of power window switches sold to Honda in the United States and elsewhere.

123.     On May 16, 2016, the DOJ announced that Corning International K.K. agreed to plead guilty and to pay a $66.5 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of ceramic substrates sold to automobile manufacturers in the United States and elsewhere.

124.     On June 15, 2016, the DOJ announced that a federal grand jury, sitting in the U.S. District Court for the Southern District of Ohio, returned two indictments charging Japanese automotive parts companies, their U.S. subsidiaries, and a total of five executives with criminal

antitrust violations for their participation in international conspiracies to eliminate competition in the sale of automotive parts in the United States. One of the indictments charges Tokai Kogyo Co. Ltd., its wholly owned U.S. subsidiary, Green Tokai Co. Ltd., and its former executive Akitada Tazumi with conspiring to rig bids for and fix the prices of automotive body sealing products sold to an automobile manufacturer for installation in vehicles sold in the United States and elsewhere. The other indictment charges Maruyasu Industries Co. Ltd., its wholly owned U.S. subsidiary, Curtis-Maruyasu America Inc., and their executives, Tadao Hirade, Satoru Murai, Kazunori Kobayashi and Yoshihiro Shigematsu, with conspiring to fix prices, allocate customers, and rig bids for steel tubes sold to automobile manufacturers for installation in vehicles sold in the United States and elsewhere.

125.    On July 20, 2016, the DOJ announced that Nishikawa Rubber Co. Ltd. agreed to plead guilty and pay a $130 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of automotive body sealing products sold to automobile manufacturers in the United States and elsewhere.

126.    On August 9, 2016, the DOJ announced that Hitachi Automotive Systems Ltd. agreed to plead guilty and pay a $55.48 million fine for its role in a conspiracy to allocate markets, fix prices and rig bids for shock absorbers sold to vehicle manufacturers in the United States and elsewhere from the mid-1990s until the summer of 2011. According to the press release, although Hitachi Automotive Systems Ltd. previously agreed to plead guilty to price-fixing and bid-rigging various automotive parts, it failed to uncover and disclose that it had also conspired to fix the prices of shock absorbers.

127.    On September 15, 2016, the DOJ announced that Alpha Corporation agreed to plead guilty and to pay a $9 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of automotive access mechanisms sold to automobile manufacturers in the United States and elsewhere.

128.    On November 8, 2016, the DOJ announced that Usui Kokusai Sangyo Kaisha Ltd. agreed to plead guilty and pay a $7.2 million criminal fine for its role in a conspiracy to fix prices, allocate customers and rid bids of automotive steel tubes sold to automobile manufacturers in the United States and elsewhere.

129.    On March 7, 2017, DOJ announced that Kiekert AG agreed to plead guilty and to pay a $6.1 million criminal fine for its role in a conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate sales of, to rig bids for, and to fix, stabilize, and maintain the prices of side-door latches and latch minimodules sold to automobile manufacturers in the United States and elsewhere.

130.    On May 31, 2018, the DOJ announced that Maruyasu Industries Co. Ltd. pleaded guilty and agreed to pay a $12 million criminal fine for its role in a conspiracy to fix prices, rig bids, allocate customers for automotive steel tubes.

131.    To date, 49 companies and 65 executives have been charged in the Antitrust Division's ongoing investigation into price-fixing and bid-rigging in the automotive parts industry. Of the 49 companies charged, 47 have either pleaded guilty or agreed to plead guilty and altogether, they have agreed to pay a total of more than $2.9 billion in criminal fines.

132.    As stated by the FBI's Special Agent in Charge, Andrew G. Arena in a January 30, 2012 press release, "[t]his criminal activity has a significant impact on the automotive

manufacturers in the United States, Canada, Japan and Europe and has been occurring at least a decade. The conduct had also affected commerce on a global scale in almost every market where automobiles are manufactured and/or sold." As Mr. Arena previously said in a September 29, 2011 press release, "[w]hen companies partner to control and price fix bids or contracts, it undermines the foundation of the United States' economic system. The FBI is committed to aggressively pursuing any company involved in antitrust crimes."

## **CLASS ACTION ALLEGATIONS**

133.    Plaintiffs bring this action on behalf of themselves and as a class action under Federal Rule of Civil Procedure ("Rule") 23(a) and (b)(2), seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Class"):

> All persons and entities who, during the Class Period, purchased or leased a new Vehicle in the United States not for resale which included one or more Electronic Braking System(s) as a component part, which were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

134.    Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of the following class (the "Damages Class"):

> All persons and entities who, during the Class Period, purchased or leased a new Vehicle in the Indirect Purchaser States[4] not for resale which included one or more Electronic Braking System(s) as a component part, which were manufactured or sold by Defendants, any current or former subsidiary of Defendants, or any co-conspirator of Defendants.

---

[4] The Indirect Purchaser States are the states listed in the Second and Third Claims for Relief.

135. The Nationwide Class and the Damages Class are referred to herein as the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Electronic Braking Systems directly or for resale.

136. While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each Class.

137. Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of both Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

(a) Whether Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Electronic Braking Systems installed in Vehicles sold in the United States;

(b) The identity of the participants of the alleged conspiracy;

(c) The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d) Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e) Whether the alleged conspiracy violated state antitrust, unfair competition, and/or consumer protection laws, as alleged in the Second and Third Claims for Relief;

(f)   Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Damages Class, thereby entitling Plaintiffs and the members of the Damages Class to disgorgement of all benefits derived by Defendants, as alleged in the Fourth Claim for Relief;

(g)   Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)   The effect of the alleged conspiracy on the prices of Electronic Braking Systems installed in Vehicles sold in the United States during the Class Period;

(i)   Whether Plaintiffs and members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(j)   Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

(k)   The appropriate injunctive and related equitable relief for the Nationwide Class; and

(l)   The appropriate class-wide measure of damages for the Damages Class.

138.   Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Electronic Braking Systems purchased indirectly from Defendants and/or their co-conspirators.

139.   Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not

antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

140.    The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

141.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

142.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## ILLUSTRATIVE EXAMPLE

143.    Bosch and Continental exchanged information regarding their Electronic Braking Systems sales to VW and, specifically, relating to the MLB evo-platform, which includes certain Audi models and the Porsche Macan. Following the RFQs for the MLB evo-platform, employees from Bosch and Continental engaged in meetings and phone conversations wherein employees from Bosch and Continental exchanged information regarding their company's respective bid.

## PLAINTIFFS AND THE CLASSES SUFFERED ANTITRUST INJURY

144.    Defendants' conspiracy had the following effects, among others:

(a)   Price competition has been restrained or eliminated with respect to Electronic Braking Systems;

(b)   The prices of Electronic Braking Systems have been fixed, raised, maintained, or stabilized at artificially inflated levels;

(c)   Indirect purchasers of Electronic Braking Systems have been deprived of free and open competition; and

(d)   Indirect purchasers of Electronic Braking Systems paid artificially inflated prices.

145.   During the Class Period, Plaintiffs and the members of the Classes paid supra-competitive prices for Electronic Braking Systems. OEMs and automobile dealers passed on inflated prices to Plaintiffs and the members of the Classes. Those overcharges have unjustly enriched Defendants.

146.   The markets for Electronic Braking Systems and Vehicles are inextricably linked and intertwined because the market for Electronic Braking Systems exists to serve the Vehicles market. Without the Vehicles, Electronic Braking Systems have little to no value because they have no independent utility. Indeed, the demand for Vehicles creates the demand for Electronic Braking Systems. As stated in the 2010 Annual Report of Lear Corporation, an automotive parts supplier: "Our sales are driven by the number of vehicles produced by the automotive manufacturers, which is ultimately dependent on consumer and fleet demand for automotive vehicles."

147.   Electronic Braking Systems are identifiable, discrete physical products that remain essentially unchanged when incorporated into a Vehicle. As a result, Electronic Braking Systems follow a traceable physical chain of distribution from Defendants to Plaintiffs and the members of

the Classes, and any cost changes attributable to Electronic Braking Systems can be traced through the chain of distribution to Plaintiffs and the members of the Classes.

148.    Just as Electronic Braking Systems can be physically traced through the supply chain, so can their prices be traced to show that changes in the prices paid by direct purchasers of Electronic Braking Systems affect prices paid by indirect purchasers of Vehicles containing Electronic Braking Systems.

149.    While even a monopolist would increase its prices when the cost of its inputs increased, the economic necessity of passing through cost changes increases with the degree of competition a firm faces. The OEM and dealer markets for Vehicles are subject to vigorous price competition. The OEMs and Vehicle dealers have thin net margins and are therefore at the mercy of their component costs, such that increases in the price of components such as Electronic Braking Systems lead to corresponding increases in prices for Vehicles at the OEM and dealer levels. When downstream distribution markets are highly competitive, as they are in the case of Vehicles containing Electronic Braking Systems as components, overcharges are passed through to ultimate consumers, such as the indirect-purchaser Plaintiffs and members of the Classes.

150.    Hence the inflated prices of Electronic Braking Systems in Vehicles resulting from Defendants' bid-rigging and price-fixing conspiracy have been passed on to Plaintiffs and the other members of the Classes by OEMs and dealers.

151.    The economic and legal literature has recognized that unlawful overcharges in a component normally result in higher prices for products containing that price-fixed component. Two antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and the late Lawrence A. Sullivan (Professor of Law Emeritus at Southwestern Law

School and author of the Handbook of the Law of Antitrust) – have observed that "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception: it is the rule."[5]

152.    As Professor Jeffrey K. MacKie-Mason (formerly Arthur W. Burks Professor for Information and Computer Science and Professor of Economics and Public Policy at the University of Michigan and now University Librarian and Chief Digital Scholarship Officer, University of California, Berkeley, and a professor in the UC Berkeley School of Information and Department of Economics), an expert who presented evidence in a number of the indirect purchaser cases involving Microsoft Corporation, said (in a passage quoted in the judicial decision in that case granting class certification):

> As is well known in economic theory and practice, at least some of the overcharge will be passed on by distributors to end consumers. When the distribution markets are highly competitive, as they are here, all or nearly the entire overcharge will be passed on through to ultimate consumers…Both of Microsoft's experts also agree upon the economic phenomenon of cost pass through, and how it works in competitive markets. This general phenomenon of cost pass through is well established in antitrust laws and economics as well.[6]

153.    The purpose of the conspiratorial conduct of Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of Electronic Braking Systems and, as a direct and foreseeable result, the price of Vehicles containing Electronic Braking Systems. Economists have developed techniques to isolate and understand the relationship between one "explanatory" variable and a "dependent" variable in those cases when changes in the dependent variable are explained by changes in a multitude of variables, even when all such variables may be changing simultaneously. That analysis – called regression analysis – is commonly used in the real world

---

[5] Robert G. Harris & Lawrence A. Sullivan, *Passing on the Monopoly Overcharge: A Comprehensive Policy Analysis*, 128 U. PA. L. REV. 268, 275 (1979).
[6] Order re: Class Certification at 13-14, *Coordination Proceedings Special Title (Rule 1550(b)) Microsoft I-V Cases*, No. J.C.C.P. No. 4106, (Cal. Sup. Ct. Aug. 29, 2000).

and in litigation to determine the impact of a price increase on one cost in a product (or service) that is an assemblage of costs. Thus, it is possible to isolate and identify only the impact of an increase in the price of Electronic Braking Systems on prices for Vehicles even though such products contain a number of other components whose prices may be changing over time. A regression model can explain how variation in the price of Electronic Braking Systems affects changes in the price of Vehicles. In such models, the price of Electronic Braking Systems would be treated as an independent or explanatory variable. The model can isolate how changes in the price of Electronic Braking Systems impact the price of Vehicles containing Electronic Braking Systems while controlling for the impact of other price-determining factors.

154.    The precise amount of the overcharge impacting the prices of Vehicles containing Electronic Braking Systems can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the chain of distribution. Thus, the economic harm to Plaintiffs and members of the Classes can be quantified.

155.    In addition to the regression analysis discussed above demonstrating impact on consumers, the DOJ's Antitrust Division, which has been investigating anticompetitive conduct in the automotive parts industry for some time, **has concluded that there is "no doubt" that consumers were hurt financially**. Sharis A. Pozen, then Acting Assistant Attorney General in charge of the DOJ's Antitrust Division said: "By rigging bids . . . [automotive parts manufacturers engaged in a price-fixing conspiracy] inflated what some of their auto manufacturing clients paid, and indirectly, what consumers paid for some cars." She also explained that "[a]s a result of this international price-fixing and bid-rigging conspiracy, automobile manufacturers paid noncompetitive and higher prices for parts in cars sold to U.S. consumers." Ms. Pozen also stated

that "[t]his cartel harmed an important industry in our nation's economy, and the Antitrust Division with the Federal Bureau of Investigation will continue to work together to ensure that these kinds of conspiracies are stopped." In a separate press statement, Ms. Pozen vowed to continue the investigation into "pernicious cartel conduct that results in higher prices to American consumers . . . ."

156.    On February 15, 2013, Scott Hammond, the Deputy Assistant Attorney General in the DOJ's Antitrust Division, discussed the DOJ's ongoing automotive parts investigation in a Thomson Reuters article. He said "[t]he investigation is broader than what we've announced so far . . . . [The investigation] is still very much ongoing, but it already appears to be the biggest criminal antitrust investigation that we've ever encountered. ***I say biggest with respect to the impact on U.S. businesses and consumers, and the number of companies and executives that are subject to the investigation***." (emphasis added).

157.    On September 26, 2013, then United States Attorney General Eric Holder in the Antitrust Division presented the DOJ's then most recent findings in the ongoing automotive parts investigation. He stated "[t]hese international price-fixing conspiracies affected more than $5 billion in automobile parts sold to U.S. car manufacturers. In total, more than 25 million cars purchased by American consumers were affected by the illegal conduct." Then Attorney General Holder also described how the conspiracies worked: "[c]ompany executives met face to face in the United States and Japan – and talked on the phone – to reach collusive agreements to rig bids, fix prices and allocate the supply of auto parts sold to U.S. car companies. In order to keep their illegal conduct secret, they used code names and met in remote locations. Then they followed up with each other regularly to make sure the collusive agreements were being adhered to." Then Attorney General Holder explained that the automotive parts conspiracies "targeted U.S. manufacturing,

U.S. businesses and U.S. consumers. As a result of these conspiracies, Americans paid more for their cars."

158.     On May 25, 2014, news sources reported that Brent Snyder, a deputy assistant attorney general in the Antitrust Division, said with respect to the automotive parts conspiracies, "[i]t's a very, very safe assumption that U.S. consumers paid more, and sometimes significantly more, for their automobiles as a result of this conspiracy."

159.     By reason of the violations of the antitrust, consumer protection, and unjust enrichment laws alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for Electronic Braking Systems than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

### A.     The Parties Entered into Tolling and Standstill Agreements

160.     On December 10, 2018 and December 12, 2018, Plaintiffs entered into Tolling and Standstill Agreements with TRW and Bosch, respectively.

161.     Each Tolling and Standstill Agreement tolled the running of any statute of limitations, statute of repose, or other time related defense based on federal, state or other law, whether at law, equity, or otherwise (including, but not limited to, defenses based on the doctrines of waiver, laches, acquiescence, or estoppel) that may be applicable to any claim for relief that arises from or relates to the facts, events, and circumstances alleged herein, for Plaintiffs and for all putative class members sought to be represented by Plaintiffs for the defined Tolling Period.

162.     Plaintiffs and TRW entered into Amended Tolling and Standstill Agreements on: December 10, 2019; March 9, 2020; May 8, 2020; and July 27, 2020. Pursuant to the July 27, 2020

Amended Tolling and Standstill Agreement, the Tolling Period began on July 27, 2020 and would remain in effect until the earlier of three months after July 27, 2020 or fourteen calendar days after a party provides notices of its intent to terminate the agreement. In accordance with this provision of the July 27, 2020 Amended Tolling and Standstill Agreement, Plaintiffs informed TRW of their intent to terminate on September 21, 2020.

163.    Plaintiffs and Bosch entered into an Amended Tolling and Standstill Agreement on December 10, 2019. Pursuant to this Amended Tolling and Standstill Agreement, the Tolling Period began on December 10, 2019 and would remain in effect until the earlier of one year after December 10, 2019 or fourteen calendar days after a party provides notices of its intent to terminate the agreement. Plaintiffs subsequently resolved their claims against Bosch on September 18, 2020

### B.    The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Their Claims

164.    Plaintiffs repeat and re-allege the allegations set forth above. Plaintiffs and the members of the Classes had no knowledge of the combination or conspiracy alleged herein, or of facts sufficient to place them on inquiry notice of the claims set forth herein, until (at the earliest) February 21, 2018, the date the EC publicly announced that Continental and Bosch participated in the Electronic Braking Systems conspiracy.

165.    Plaintiffs and members of the Classes are consumers and businesses that purchased or leased new Vehicles containing Electronic Braking Systems not for resale. They had no direct contact or interaction with Defendants and had no means from which they could have discovered the Electronic Braking Systems combination and conspiracy described in this Complaint before February 21, 2018.

166.    No information in the public domain was available to Plaintiffs and members of the Classes concerning the combination or conspiracy alleged herein prior to February 21, 2018, the

date the EC publicly announced that Continental and Bosch participated in the conspiracy alleged herein. Plaintiffs and the members of the Classes had no means of obtaining any facts or information concerning any aspect of Defendants or their co-conspirators' dealings with OEMs or other direct purchasers, much less the fact that Defendants and their co-conspirators had engaged in the combination and conspiracy alleged herein.

167. For these reasons, the statute of limitations as to Plaintiffs' and the Classes' claims did not begin to run and has been tolled with respect to the claims that Plaintiff and the members of the Classes have alleged in this Complaint.

### C. Fraudulent Concealment Tolled the Statute of Limitations

168. In the alternative, application of the doctrine of fraudulent concealment tolled the statute of limitations on the claims asserted herein by Plaintiffs and the Classes. Plaintiffs and the members of the Classes did not discover and could not discover through the exercise of reasonable diligence, the existence of the conspiracy alleged herein until February 21, 2018, the date the EC publicly announced that Continental and Bosch participated in the conspiracy alleged herein.

169. Before that time, Plaintiffs and the members of the Classes were unaware of Defendants' unlawful conduct and did not know before then that they were paying supra-competitive prices for Electronic Braking Systems throughout the United States during the Class Period. No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that even hinted to Plaintiffs that they were being injured by Defendants' unlawful conduct.

170. The affirmative acts of Defendants alleged herein, including acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.

171. Specifically, as then Attorney General Holder explained in connection with the DOJ's globally coordinated investigation into price-fixing in the Automotive parts industry, "[i]n

order to keep their illegal conduct secret, [Defendants] used code names and met in remote locations."

172.     By their very nature, Defendants' anticompetitive conspiracy and unlawful combinations were inherently self-concealing. Electronic Braking Systems are not exempt from antitrust regulation and, thus, Plaintiffs and members of the Classes reasonably considered the Electronic Braking Systems industry to be a competitive industry. According to EC Decision, Continental and Bosch colluded by exchanging sensitive business information over the phone, over email, and at meetings with one another. Accordingly, a reasonable person under the circumstances would not have been alerted to begin to investigate the legitimacy of Defendants' Electronic Braking Systems prices before February 21, 2018 at the earliest.

173.     Plaintiffs and the members of the Classes could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, combination, or conspiracy.

174.     According to the EC Decision, throughout the course of the conspiracy, Continental and Bosch colluded by engaging in bilateral information exchanges over the phone, over email, and at meetings. In doing so, the conspirators coordinated their pricing in a manner to avoid detection by the OEMs. The exact dates and times of these communications and meetings are within the knowledge of Continental and Bosch.

175.     Because the alleged conspiracy was self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiffs and members of the Classes had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent

person to investigate whether a conspiracy existed, until, at the earliest, February 21, 2018, the date the EC publicly announced that Continental and Bosch participated in the conspiracy alleged herein.

176.    For these reasons, the statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled and did not begin to run until February 21, 2018.

**FIRST CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**(on behalf of Plaintiffs and the Nationwide Class)**

177.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

178.    Defendants and unnamed co-conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

179.    The acts done by Defendants as part of, and in furtherance of, their and their co-conspirators' contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of their affairs.

180.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Electronic Braking Systems, thereby creating anticompetitive effects.

181.    The anticompetitive acts were intentionally directed at the United States market for Electronic Braking Systems and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Electronic Braking Systems installed in vehicles sold throughout the United States.

182. The conspiratorial acts and combinations have caused unreasonable restraints in the market for Electronic Braking Systems.

183. As a result of Defendants' unlawful conduct, Plaintiffs and other similarly situated indirect purchasers in the Nationwide Class who purchased Electronic Braking Systems have been harmed by being forced to pay inflated, supra-competitive prices for Electronic Braking Systems.

184. In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

185. Defendants and their co-conspirators' conspiracy had the following effects, among others:

(a) Price competition in the market for Electronic Braking Systems has been restrained, suppressed, and/or eliminated in the United States;

(b) Prices for Electronic Braking Systems sold by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c) Plaintiffs and members of the Nationwide Class who purchased Electronic Braking Systems indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

186. Plaintiffs and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for Electronic Braking Systems purchased indirectly from Defendants and their co-conspirators than they would have paid and will pay in the absence of the conspiracy.

187.    The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws.

188.    Plaintiffs and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### SECOND CLAIM FOR RELIEF
**Violation of State Antitrust Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

189.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

190.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the sale of Electronic Braking Systems in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

191.    The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Electronic Braking Systems and to allocate customers for Electronic Braking Systems in the United States.

192.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

(a)    participating in meetings and conversations among themselves during which they agreed to price Electronic Braking Systems at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiffs and members of the Damages Class with respect to Electronic Braking Systems sold in the United States;

(b)    allocating customers and markets for Electronic Braking Systems in the United States in furtherance of their agreements; and

(c)      participating in meetings and conversations among themselves in the United

States and elsewhere to implement, adhere to, and police the unlawful agreements they

reached.

193.   Defendants and their co-conspirators engaged in the actions described above for the

purpose of carrying out their unlawful agreements to fix, maintain, increase, or stabilize prices and

to allocate customers with respect to Electronic Braking Systems.

194.   Defendants' anticompetitive acts described above were knowing and willful and

constitute violations or flagrant violations of the following state antitrust statutes.

195.   Defendants have entered into an unlawful agreement in restraint of trade in

violation of the Arizona Revised Statutes, §§ 44-1401, *et seq*.

(a)      Defendants' combination or conspiracy had the following effects: (1)

Electronic Braking Systems price competition was restrained, suppressed, and

eliminated throughout Arizona; (2) Electronic Braking Systems prices were raised,

fixed, maintained and stabilized at artificially high levels throughout Arizona; (3)

Plaintiffs and members of the Damages Class were deprived of free and open

competition; and (4) Plaintiffs and members of the Damages Class paid

supracompetitive, artificially inflated prices for Electronic Braking Systems.

(b)      During the Class Period, Defendants' illegal conduct substantially affected

Arizona commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs

and members of the Damages Class have been injured in their business and property

and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

196.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Electronic Braking Systems at supra-competitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Electronic Braking Systems.

(c)     For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and the following: (1) Fixing, raising, stabilizing, and pegging the price of Electronic Braking Systems; and (2) Allocating among themselves the production of Electronic Braking Systems.

(d)     The combination and conspiracy alleged herein has had, *inter alia*, the following effects: (1) Price competition in the sale of Electronic Braking Systems has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for Electronic Braking Systems sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased Electronic Braking Systems directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for Electronic Braking Systems than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

197.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels

throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

198.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)　During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)　As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)　By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

199.　Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a)　Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)　During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c)　As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

53

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

200.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Maine; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

201.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

(a)   Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)   During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

202.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)   Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Electronic Braking Systems prices were

raised, fixed, maintained and stabilized at artificially high levels throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq*.

203.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supracompetitive, artificially inflated prices for Electronic Braking Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

204.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

(a)    Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

205.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

206.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq*.

207.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Electronic Braking Systems prices were

raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq*.

208.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems when they purchased Vehicles containing Electronic Braking Systems, or purchased products

that were otherwise of lower quality than they would have been absent Defendants' and their co-conspirators' illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq*. The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq*.

209.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

210.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

211.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Oregon; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

212.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

(a)   Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)   During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

(c)   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)   By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

213.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

(a)   Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Electronic Braking Systems prices were

raised, fixed, maintained and stabilized at artificially high levels throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

214.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Utah; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants' have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq*.

215.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2453, *et seq*.

(a)    Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)    During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2453, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Vermont Stat. Ann. 9 §§ 2453, *et seq*.

216.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq*.

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq*. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-18-1, *et seq*.

217.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

(a)     Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Electronic Braking Systems prices were raised, fixed, maintained and stabilized at artificially high levels throughout Wisconsin; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

218.     Plaintiffs and members of the Damages Class in each of the above states have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy and agreement. Plaintiffs and members of the Damages Class have paid more for Electronic Braking Systems than they otherwise would have paid in the absence of Defendants'

unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from that which makes Defendants' conduct unlawful.

219.     In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of the Plaintiffs and the members of the Damages Class.

220.     Accordingly, Plaintiffs and the members of the Damages Class in each of the above jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

### THIRD CLAIM FOR RELIEF
**Violation of State Consumer Protection Statutes**
**(on behalf of Plaintiffs and the Damages Class)**

221.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

222.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

223.     Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101, *et seq*.

> (a)     Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Electronic Braking Systems Products were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10).

(c)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Electronic Braking Systems Products prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Arkansas Code Annotated, § 4-88-107(a)(10) and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

224.    Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a)     During the Class Period, Defendants marketed, sold, or distributed Electronic Braking Systems in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b)     This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(c)     Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above;

(d)     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

(e)     Defendants' acts or practices are unfair to purchasers of Electronic Braking Systems (or Vehicles containing them) in the State of California within the meaning of Section 17200, California Business and Professions Code;

(f)     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(g)     Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(h)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(i)     The unlawful and unfair business practices of Defendants have caused and continue to cause Plaintiffs and the members of the Damages Class to pay supra-competitive and artificially inflated prices for Electronic Braking Systems (or Vehicles containing them). Plaintiffs and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

(j)     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

(k)     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of

all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

225.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

(a)   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and/or non-competitive levels, the prices at which Electronic Braking Systems were sold, distributed or obtained in the District of Columbia.

(b)   The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Electronic Braking Systems. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Electronic Braking Systems because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. Defendants' conduct with regard to sales of Electronic Braking Systems, including their illegal conspiracy to secretly fix the price of Electronic Braking Systems at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly

unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for Electronic Braking Systems.

(c)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

226.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Florida; (2) Electronic Braking Systems prices were raised, fixed,

maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq*., and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

227.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq*.

(a)    Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

228.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

(a)     Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

(b)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial and non-competitive levels, the prices at which Electronic Braking Systems were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(c)      Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of

free and open competition; and (4) Plaintiffs and members of the Damages Class

paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(d)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs

and members of the Damages Class were injured and are threatened with further

injury.

(e)     Defendants have been or will be served with a demand letter in accordance

with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand

letter was unnecessary due to Defendants not maintaining a place of business within

the Commonwealth of Massachusetts or not keeping assets within the

Commonwealth. More than thirty days has passed since such demand letters were

served, and each of Defendants served has failed to make a reasonable settlement

offer.

(f)     By reason of the foregoing, Defendants engaged in unfair competition and

unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants

and their co-conspirators' violations of Chapter 93A were knowing or willful,

entitling Plaintiffs and members of the Damages Class to multiple damages.

229.     Defendants have engaged in unfair competition or unfair, unconscionable, or

deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev.

Stat. § 407.010, *et. seq.*

(a)     Plaintiffs and the Damages Class purchased Electronic Braking Systems for

personal, family, or household purposes.

(b)     Defendants engaged in the conduct described herein in connection with the sale of Electronic Braking Systems in trade or commerce in a market that includes Missouri.

(c)     Defendants agreed to, and did in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which Electronic Braking Systems were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

(d)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning their unlawful activities and artificially inflated prices for Electronic Braking Systems. It concealed, suppressed, and omitted facts that would have been important to Plaintiffs and members of the Damages Class as they related to the cost of Electronic Braking Systems they purchased.

(e)     Defendants misrepresented the real cause of price increases and/or the absence of price reductions in Electronic Braking Systems by making public statements that were not in accord with the facts.

(f)     Defendants' statements and conduct concerning the price of Electronic Braking Systems were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing Electronic Braking Systems at prices established by a free and fair market.

(g)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Missouri; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(h)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(i)     As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

(j)     Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

230.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Montana Consumer Protection Act of 1973, Mont. Code, §§ 30-14-101, *et seq.*

(a)    Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems competition was restrained, suppressed, and eliminated throughout Montana; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Montana; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

(d)    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-101, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

231.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

(a)    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at non-competitive and

80

artificially inflated levels, the prices at which Electronic Braking Systems were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and the members of the Damages Class and the prices paid by them for Electronic Braking Systems as set forth in N.M.S.A., § 57-12-2E. Plaintiffs were not aware of Defendants' price-fixing conspiracy and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for Electronic Braking Systems. Defendants had the sole power to set that price and Plaintiffs had no power to negotiate a lower price. Moreover, Plaintiffs lacked any meaningful choice in purchasing Electronic Braking Systems because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs could avoid the overcharges. Defendants' conduct with regard to sales of Electronic Braking Systems, including their illegal conspiracy to secretly fix the price of Electronic Braking Systems at supra-competitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and the public. Defendants took grossly unfair advantage of Plaintiffs. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was

a gross disparity between the price paid and the value received for Electronic Braking Systems.

(c)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(d)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and the members of the Damages Class have been injured and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

232.     Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Electronic Braking Systems were sold,

distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)    Defendants and their co-conspirators made public statements about the prices of Electronic Braking Systems and products containing Electronic Braking Systems that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Electronic Braking Systems and products containing Electronic Braking Systems; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information.

(c)    Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who indirectly purchased Electronic Braking Systems were misled to believe that they were paying a fair price for Electronic Braking Systems or the price increases for Electronic Braking Systems were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

(d)    Defendants knew that their unlawful trade practices with respect to pricing Electronic Braking Systems would have an impact on New York consumers and not just Defendants' direct customers.

(e)    Defendants knew that their unlawful trade practices with respect to pricing Electronic Braking Systems would have a broad impact, causing consumer class members who indirectly purchased Electronic Braking Systems to be injured by

paying more for Electronic Braking Systems than they would have paid in the absence of Defendants' unlawful trade acts and practices.

(f)     The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(g)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout New York; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(h)     During the Class Period, Defendants marketed, sold, or distributed Electronic Braking Systems in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

(i)     During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Electronic Braking Systems in New York.

(j)     Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

233.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Electronic Braking Systems were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

(b)     Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of Electronic Braking Systems created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conspiracy. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of the conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

(c)     The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which

resulted in consumer injury and broad adverse impact on the public at large and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(e)     During the Class Period, Defendants marketed, sold, or distributed Electronic Braking Systems in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(f)     During the Class Period, Defendants, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Electronic Braking Systems in North Carolina.

(g)     Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

234.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

(a)    Members of this Damages Class purchased Electronic Braking Systems for personal, family, or household purposes.

(b)    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Electronic Braking Systems were sold, distributed, or obtained in Rhode Island.

(c)    Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning their unlawful activities and artificially inflated prices for Electronic Braking Systems. Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average, non-business consumer, they breached that duty by their silence. Defendants misrepresented to all consumers during the Class Period that their Electronic Braking Systems prices were competitive and fair.

(d)    Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(e)      As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(f)      Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Electronic Braking Systems, likely misled all consumers acting reasonably under the circumstances to believe that they were purchasing Electronic Braking Systems at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of Electronic Braking Systems they purchased.

(g)      Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

235.      Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)      Defendants' combination or conspiracy had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South

Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(b) During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 39-5-10, *et seq.*, and, accordingly, Plaintiffs and the members of the Damages Class seek all relief available under that statute.

236. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a) Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Electronic Braking Systems were sold, distributed, or obtained in Vermont.

(b) Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning their unlawful activities and artificially inflated prices for Electronic Braking Systems. Defendants owed a duty to disclose such facts and considering the relative lack of sophistication of the average, non-business consumer, Defendants breached that duty by their silence. Defendants

misrepresented to all consumers during the Class Period that their Electronic Braking Systems prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects: (1) Electronic Braking Systems price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Electronic Braking Systems prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for Electronic Braking Systems.

(d)     As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their affirmative misrepresentations and omissions concerning the prices of Electronic Braking Systems, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Electronic Braking Systems at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiffs and the Damages Class)

237.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

238.    Plaintiffs bring this claim under the laws of all states listed in the Second and Third Claims, *supra*.

239.    As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of Electronic Braking Systems

240.    Defendants have benefited from their unlawful acts, and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayments made by Plaintiffs or the members of the Damages Class for Electronic Braking Systems.

241.    Plaintiffs and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and the members of the Damages Class may make claims on a pro rata basis.

242.    Pursuit of any remedies against the firms from which Plaintiffs and the members of the Damages Class purchased Vehicles containing Electronic Braking Systems subject to Defendants' conspiracy would have been futile.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs respectfully request that:

243.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) and direct that reasonable notice of this action, as provided by Rule 23(c)(2), be given to each and every member of the Classes;

244. That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

      (a)    An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

      (b)    A *per se* violation of Section 1 of the Sherman Act; and

      (c)    An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein.

      (d)    Acts of unjust enrichment by Defendants as set forth herein.

245. Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

246. Plaintiffs and the members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

247. Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

248.     Plaintiffs and the members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

249.     Plaintiffs and the members of the Classes be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

250.     Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

251.     Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

DATED: August 26, 2021

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison
Counsel for the Proposed End-Payor Plaintiff
Classes*

Adam J. Zapala
Elizabeth T. Castillo
Reid W. Gaa

**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
rgaa@cpmlegal.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler A. Langham
**SUSMAN GODFREY L.L.P**.
1000 Louisiana St.
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

William V. Reiss
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
WReiss@RobinsKaplan.com

*Attorneys for Plaintiffs and Interim Co-Lead Class Counsel for the Proposed End-Payor Plaintiff Classes*

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b), of all issues so triable.

DATED: August 26, 2021

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Devon P. Allard (P71712)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
Facsimile: (248) 652-2852
epm@millerlawpc.com
dpa@millerlawpc.com

*Attorneys for Plaintiffs and Interim Liaison Counsel for the Proposed End-Payor Plaintiff Classes*

Adam J. Zapala
Elizabeth T. Castillo
Reid W. Gaa
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
rgaa@cpmlegal.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford

Chanler A. Langham
**SUSMAN GODFREY L.L.P**.
1000 Louisiana St.
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

William V. Reiss

**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
WReiss@RobinsKaplan.com

*Attorneys for Plaintiffs and Interim Co-Lead
Class Counsel for the Proposed End-Payor
Plaintiff Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ E. Powell Miller*
E. Powell Miller