**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| HALLEY ASCHER, *et al.*, on behalf of themselves and all others similarly situated, | Master File No. 2:12-md-02311 Honorable Sean F. Cox |
| Plaintiffs, | |
| v. | |
| ZF TRW AUTOMOTIVE HOLDING CORP., ZF FRIEDRICHSHAFEN AG, LUCAS AUTOMOTIVE GMBH, ROBERT BOSCH GMBH, and ROBERT BOSCH LLC, | |
| Defendants. | |
| IN RE HYDRAULIC BRAKING SYSTEMS | Case No. 2:21-cv-11993 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTIONS | |
| HALLEY ASCHER, *et al.*, on behalf of themselves and all others similarly situated, | Master File No. 2:12-md-02311 Honorable Sean F. Cox |
| Plaintiffs, | |
| v. | |
| ROBERT BOSCH GMBH and ROBERT BOSCH LLC, | |
| Defendants. | |
| IN RE ELECTRONIC BRAKING SYSTEMS | Case No. 2:21-cv-11989 |
| THIS DOCUMENT RELATES TO: END-PAYOR ACTIONS | |

**CORRECTED MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED SETTLEMENT WITH THE BOSCH DEFENDANTS AND**
**PROVISIONAL CERTIFICATION OF SETTLEMENT CLASSES**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that as soon as this Motion may be heard before the Honorable Sean F. Cox, End-Payor Plaintiffs ("EPPs") will and do hereby respectfully move the Court for an order preliminarily approving a proposed settlement between EPPs and Defendants Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch") in the amount of US $2,242,000.00 and provisional certification of the proposed Settlement Classes in the above-entitled actions.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof and exhibits thereto, all filings in the MDL Litigation, as defined in the Memorandum of Law in support of this Motion, and such argument as may be presented to the Court.

Dated: August 27, 2021

*/s/ Elizabeth T. Castillo*
Adam J. Zapala
Elizabeth T. Castillo
Reid W. Gaa
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
rgaa@cpmlegal.com

William V. Reiss
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver

**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-
Payor Plaintiff Classes*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| HALLEY ASCHER, *et al.*, on behalf of themselves and all others similarly situated, | Master File No. 2:12-md-02311<br>Honorable Sean F. Cox |
| Plaintiffs, | |
| v. | |
| ZF TRW AUTOMOTIVE HOLDING CORP., ZF FRIEDRICHSHAFEN AG, LUCAS AUTOMOTIVE GMBH, ROBERT BOSCH GMBH, and ROBERT BOSCH LLC, | |
| Defendants. | |
| IN RE HYDRAULIC BRAKING SYSTEMS | Case No. 2:21-cv-11993 |
| THIS DOCUMENT RELATES TO:<br>END-PAYOR ACTIONS | |
| HALLEY ASCHER, *et al.*, on behalf of themselves and all others similarly situated, | Master File No. 2:12-md-02311<br>Honorable Sean F. Cox |
| Plaintiffs, | |
| v. | |
| ROBERT BOSCH GMBH and ROBERT BOSCH LLC, | |
| Defendants. | |
| IN RE ELECTRONIC BRAKING SYSTEMS | Case No. 2:21-cv-11989 |
| THIS DOCUMENT RELATES TO:<br>END-PAYOR ACTIONS | |

**CORRECTED MEMORANDUM OF LAW IN SUPPORT OF END-PAYOR**
**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**PROPOSED SETTLEMENT WITH THE BOSCH DEFENDANTS AND**
**PROVISIONAL CERTIFICATION OF A SETTLEMENT CLASSES**

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED ......................................................................... vii

PRELIMINARY STATEMENT ........................................................................................... 1

THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT ...4

ARGUMENT ....................................................................................................................... 9

I.    The Court Should Grant Preliminary Approval Because the Proposed Settlement Falls Well Within the Range of Possible Approval. ............................................. 9

II.   The Court Should Grant Preliminary Approval Because the Proposed Settlement Satisfies the Requirements of Rule 23(e) and Sixth Circuit Precedent ............. 11

    A.    The Class Representatives and Class Counsel Have Adequately Represented the Classes (Rule 23(e)(2)(A)). .................................................................. 13

    B.    The Settlement Agreement Is the Result of Thorough Arm's-Length Negotiations (Rule 23(e)(2)(B)) and Is Fair, Adequate and Reasonable in the Opinion of Highly Experienced Class Counsel (Sixth Circuit's Third Factor). ....................................................................................................... 14

    C.    The Proposed Settlement Provides the Best Possible Relief for the Classes. ....................................................................................................... 15

        i.    The Proposed Settlement Achieves an Excellent Result for the Classes, Given the "Costs, Risks and Delay of Trial and Appeal" (Rule 23(e)(2)(C)(i) and Sixth Circuit's First and Second Factors), and Treats Class Members Equitably (Rule 23(e)(2)(D)) .......................... 15

        ii.    The Settlement Does Not Propose An Award of Attorney's Fees At This Time (Rule 23(e)(2)(C)(iii)). ...................................................... 17

        iii.   EPPs Have Attached the Only Agreement in Connection with the Proposed Settlement (Rule 23(e)(2)(C)(iv)). ...................................... 17

III.   The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23. ............................................................................................................. 18

    A.    The Proposed Settlement Classes Meet the Requirements of Rule 23(a) ..... 19

        i.    The Proposed Settlement Classes are so Numerous That It Is Impracticable to Bring All Class Members Before the Court. ............ 19

        ii.    End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions. ..... 20

|  | iii. | End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes. .............22 |

|  | iv. | Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes. .............................................................22 |

| B. | The | Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3). .............................................................................................23 |

|  | i. | Common Questions of Law and Fact Predominate.............................23 |

|  | ii. | A Class Action Is the Superior Method to Adjudicate These Claims. 25 |

IV. Notice to the Settlement Class Members. ...........................................................26

CONCLUSION ................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Aluminum Phosphide Antitrust Litig.*,
    160 F.R.D. 609 (D. Kan. 1995)...........................................................................................22

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..................................................................................................24, 25, 27

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)...................................................................................................20, 24

*In re Automotive Parts Antitrust Litigation*,
    Master File Case No. 2:12-md-02311......................................................................1, 8, 13, 14

*Blades v. Monsanto Co.*,
    400 F.3d 562 (8th Cir. 2005) ...............................................................................................25

*Bobbit v. Acad. of Reporting*,
    Case No. 07-10742, 2009 U.S. Dist. LEXIS 62365 (E.D. Mich. Jul. 21, 2009) .....................10

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) ...................................................................................*passim*

*Cason-Merenda v. VHS of Mich., Inc.*,
    296 F.R.D. 528 (E.D. Mich. 2013) ....................................................................19, 21, 23, 24

*Clark Equip. Co. v Int'l Union of Allied Indus. Workers of Am.*,
    803 F.2d 878 (6th Cir. 1986) ...............................................................................................10

*Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)...................................................................................................25

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) ...............................................................................................13

*In re Delphi Corp. Sec. Derivatives & ERISA Litig.*,
    248 F.R.D. 483 (E.D. Mich. 2008) ......................................................................................19

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    Case No. 02-md-1486, 2006 U.S. Dist. LEXIS 39841 (N.D. Cal. June 5, 2006)....................22

*In re Foundry Resins Antitrust Litig.*,
    242 F.R.D. 393 (S.D. Ohio 2007).....................................................................................*passim*

*Golden v. City of Columbus*,
    404 F.3d 950 (6th Cir. 2005) ..............................................................................................20

*Griffin v. Flagstar Bancorp, Inc.*,
    Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12,
    2013) ...............................................................................................................................9, 21, 23

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    No. 12-0660-DRH, 2018 U.S. Dist. LEXIS 210368 (S.D. Ill. Dec. 13, 2018)........................17

*Int'l Union, UAW v. Ford Motor Co*.,
    Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich.
    Jul. 13, 2006)......................................................................................................................10, 22

*IUE-CWA v. Gen. Motors Corp*.,
    238 F.R.D. 583 (E.D. Mich. 2006) .........................................................................................9

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008).................................................................................15

*Miller v. Univ. of Cincinnati*,
    241 F.R.D. 285 (S.D. Ohio 2006)...........................................................................................20

*In re Packaged Ice Antitrust Litig.*,
    Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13,
    2011) ...............................................................................................................................12, 15, 25

*In re Packaged Ice Antitrust Litig*.,
    Case No. 08-md-01952, U.S. Dist. LEXIS 140235 (E.D. Mich. Sept. 2, 2010) ....................19

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003).....................................................................................16

*In re Scrap Metal Antitrust Litig*.,
    527 F.3d 517 (6th Cir. 2008) ..........................................................................................24, 25

*Sheick v. Auto Component Carrier LCC*,
    Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18,
    2010) ......................................................................................................................................14

*In re Southeastern Milk Antitrust Litig*.,
    Case No. 2:09-md-1000, U.S. Dist. LEXIS 94223 (E.D. Tenn. Sept. 7, 2010).......................20

*In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig*.,
    Case No. 1:01-cv-9000, 2001 U.S. Dist. LEXIS 26714 (E.D. Ohio Oct. 19,
    2001) .................................................................................................................................10, 11

*Thacker v. Chesapeake Appalachia, L.L.C.*,
    259 F.R.D. 262 (E.D. Ky. 2009)............................................................................................14

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
    219 F.R.D. 661 (D. Kan. 2004)..............................................................................................26

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002)...............................................................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541 (2011)....................................................................................19

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)...................................................................................................16

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ..........................................................................................*passim*

## Rules

Federal Rules of Civil Procedure
    Rule 23 ..............................................................................................................................11, 19, 20
    Rule 23(a)........................................................................................................................19, 20, 22, 23
    Rule 23(a)(1)....................................................................................................................................20, 21
    Rule 23(a)(3)....................................................................................................................................22, 23
    Rule 23(a)(4)..............................................................................................................................................23
    Rule 23(b) ...................................................................................................................................................19
    Rule 23(b)(3)....................................................................................................................................*passim*
    Rule 23(e).............................................................................................................................................11, 12
    Rule 23(e)(1) .............................................................................................................................................12
    Rule 23(e)(1)(B)........................................................................................................................................11
    Rule 23(e)(2)..............................................................................................................................................11
    Rule 23(e)(2)(A) .......................................................................................................................................13
    Rule 23(e)(2)(B)........................................................................................................................................14
    Rule 23(e)(2)(C)(i).....................................................................................................................................15
    Rule 23(e)(2)(C)(ii)....................................................................................................................................17
    Rule 23(e)(2)(C)(iii)...................................................................................................................................18
    Rule 23(e)(2)(C)(iv)...................................................................................................................................18
    Rule 23(e)(2)(D) .......................................................................................................................................15

## Other Authorities

2 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (3d ed. 1992)
    § 18.28........................................................................................................................................25

4 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS (5th ed.
    updated June 2021)
    § 3:19 .........................................................................................................................................22

§ 13.10........................................................................................................................................10

Manual For Complex Litigation (Fourth) (2004)
    § 21.612......................................................................................................................................19
    § 21.662................................................................................................................................10, 15
    § 21.63........................................................................................................................................10
    § 30.41........................................................................................................................................11

## STATEMENT OF ISSUES PRESENTED

1. Whether the settlement between EPPs and Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch"), embodied in the Settlement Agreement entered into on September 18, 2020 ("Settlement Agreement") and attached hereto as Exhibit 1, is fair, reasonable, and adequate, and should be preliminarily approved?

> Answer: Yes.

2. Whether the Court should provisionally certify the Settlement Classes under Federal Rules of Civil Procedure ("Rules") 23(a) and (b)(3)?

> Answer: Yes.

3. Whether the Court should stay the proceedings by EPPs against Bosch in accordance with the terms of the Settlement Agreement?

> Answer: Yes.

4. Whether the Court should authorize EPPs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court?

> Answer: Yes.

5. Whether the Court should appoint Interim Co-Lead Class Counsel for EPPs as Settlement Class Counsel for this settlement?[1]

> Answer: Yes.

---

[1] Unless otherwise defined, capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

The EPPs on behalf of themselves and all others similarly situated, by and through the undersigned Interim Co-Lead Class Counsel, respectfully submit this memorandum in support of their motion seeking preliminary approval of a settlement with Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch"), and provisional certification of the proposed Settlement Classes in the above-entitled actions ("Actions").

## PRELIMINARY STATEMENT

Contemporaneously with the filing of this Motion, EPPs have filed class action complaints relating to Hydraulic Braking Systems and Electronic Braking Systems ("Relevant Products") as well as a motion seeking preliminary approval of a settlement with Defendants ZF TRW Automotive Holdings Corp, ZF Friedrichshafen AG (the successor in interest into which TRW KFZ Ausrüstung GmbH merged), and Lucas Automotive GmbH (now known as ZF Active Safety GmbH) (together, "TRW"). EPPs respectfully submit that the Relevant Products cases are newly-filed cases that should be coordinated as part of the parts at issue in these coordinated multi-district proceedings, *In re Automotive Parts Antitrust Litigation* ("MDL Litigation"), Master File Case No. 2:12-md-02311, given that they involve alleged anticompetitive conduct among automotive suppliers in the automotive parts industry. Absent any new information, EPPs expect the Hydraulic Braking Systems and Electronic Braking Systems actions ("Braking Systems Actions") to be the last automotive parts cases in this MDL Litigation and, if approved, the proposed settlements would resolve both Braking Systems Actions in full. For purpose of the proposed settlements with Bosch and TRW, the term "Hydraulic Braking Systems" has the meaning set forth in Paragraph 3 of the Class Action Complaint, Case No. 2:21-cv-11993 (Aug. 26, 2021), ECF No. 1 ("Hydraulic Braking Systems Compl."). *See* Settlement Agreement at ¶ 7. For purposes of the proposed settlement with Bosch, the term "Electronic Braking Systems" has the meaning set forth in Paragraph 3 of the

1

Class Action Complaint, Case No. 2:21-cv-11989 (Aug. 26, 2021), ECF No. 1 ("Electronic Braking Systems Compl."). *Id.*

Braking systems are an essential input for car manufacturers. There are two main braking systems available: Hydraulic Braking Systems and Electronic Braking Systems. Both systems are made up of additional component parts. Hydraulic Braking Systems use fluid to transfer pressure to the vehicle's braking mechanism, slowing the vehicle and consist of an actuation system and a foundation system. The actuation system is made up of a brake booster and main brake cylinder, while the foundation system is made up of a disc brake with saddle or drum brake and wheel brake cylinder. Electronic Braking Systems prevent cars from skidding by providing electronic stability controls when braking (anti-lock braking system or "ABS") or under all driving conditions (electronic stability control or "ESC"). Both Hydraulic Braking Systems and Electronic Braking Systems can be contained within the same vehicle.

EPPs bring the Hydraulic Braking Systems Complaint against Bosch and TRW for engaging in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Hydraulic Braking Systems. Hydraulic Braking Systems Compl. ¶¶ 71-82. EPPs bring the Electronic Braking Systems Complaint against Bosch for engaging in a long-running conspiracy to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the market and customers in the United States for Electronic Braking Systems. Electronic Braking Systems Compl. ¶¶ 56-57.

The Court appointed the undersigned firms as Interim Co-Lead Class Counsel and Interim Liaison Class Counsel for the End-Payor Plaintiffs' Actions in the Master Docket for MDL No. 2311. *See* Case Management Order No. 3, Master File No. 2:12-md-02311, Case No.

2:12-cv-00100 (Aug. 7, 2012), ECF No. 271. From the inception of this litigation, Interim Co-Lead Class Counsel has represented the interests of the EPP classes, including overseeing settlement of the claims brought against Bosch. This proposed settlement is a result of those efforts.

EPPs allege that, in furtherance of the alleged conspiracy, Defendants and their co-conspirators agreed, during meetings and conversations, to unlawfully fix, artificially raise, maintain and/or stabilize prices, rig bids for, and allocate the supply of the Relevant Products, and then sold those products at supracompetitive prices to automobile manufacturers in the United States and elsewhere. Bosch denies such allegations and has asserted defenses thereto.

The settlement between the EPPs and Bosch is meaningful and substantial and will result in a payment of U.S. $2,242,000.00 for the benefit of the EPP Class. Standing alone, the monetary recovery from Bosch is important, but if any other settlement in the Actions does not receive final approval or if EPPs name a new Defendant in the Actions, the settlement is also valuable to the EPPs in that it requires Bosch to provide comprehensive discovery cooperation in the form of, *inter alia*, attorney proffers, interviews with and depositions of witnesses, and the production of certain documents (including transactional data), related to the claims asserted in the Actions. *See* Settlement Agreement at ¶¶ 34–48. The ability to obtain such assistance without protracted and expensive discovery is extremely valuable to the EPPs. Bosch's cooperation agreement will greatly enhance the EPPs' ability to prosecute their claims against other Defendants or against any new Defendant added to the Actions. In addition, Bosch has agreed to refrain from conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with

3

respect to the sale of the Relevant Products for a period of twenty-four (24) months from the date of entry of the final judgments in each respective Action. Settlement Agreement at ¶ 28.

EPPs and their Interim Co-Lead Class Counsel believe, for all the reasons set forth herein, that the settlement with Bosch is in the best interest of the proposed Settlement Classes and merits the Court's preliminary approval. EPPs therefore request the entry of an Order:

1.   Preliminarily approving the settlement;

2.   Provisionally certifying the proposed Settlement Classes;

3.   Staying the proceedings against Bosch in accordance with the terms of the Settlement Agreement;

4.   Authorizing EPPs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court; and

5.   Appointing Interim Co-Lead Class Counsel for EPPs as Settlement Class Counsel for this settlement.

## THE BASIC TERMS AND BACKGROUND OF THE SETTLEMENT AGREEMENT

The Settlement Agreement with Bosch arises from extensive arm's length and good faith negotiations. Interim Co-Lead Class Counsel also participated in extensive negotiations that took place over several months through numerous telephone calls and other communications.

**Settlement Classes**: The Settlement Agreement defines two separate settlement groups (together, the "Settlement Classes").

(a)   The Settlement Agreement defines the "Hydraulic Braking Systems Settlement Class" as follows:

All persons and entities that, from February 13, 2007 through December 31, 2017, purchased or leased a new Vehicle[2] in the United States not for resale, which included one or more Hydraulic Braking System(s) as a component part, or indirectly

---

[2] "Vehicles" are defined in the Settlement Agreement to refer to "new four-wheeled passenger automobiles, vans, sports utility vehicles, and crossover or pick-up trucks." *See* Settlement Agreement at ¶ 16.

purchased one or more Hydraulic Braking System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Hydraulic Braking Systems directly or for resale.

(b)  The Settlement Agreement defines the "Electronic Braking Systems Settlement Class" as follows:

All persons and entities that, from September 29, 2010 through December 31, 2017, purchased or leased a new Vehicle in the United States not for resale, which included one or more Electronic Braking System(s) as a component part, or indirectly purchased one or more Electronic Braking System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. Excluded from the Settlement Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Electronic Braking Systems directly or for resale.

Settlement Agreement at ¶ 12.

**Settlement Amount**: Bosch has agreed to pay U.S. $2,242,000.00 by wiring such funds to an escrow account ("Escrow Account") established at Wells Fargo Bank within thirty (30) days following the later of (i) entry of an order preliminarily approving this Agreement or (ii) the date Bosch is provided with the account number, account name and wiring transfer information for the Escrow Account. *Id.* at ¶ 26.

**Cooperation**: Bosch has agreed to provide extensive cooperation to the EPPs. A general summary of Bosch's cooperation obligations is provided below. The terms of this cooperation are set forth in fuller detail in Section F (¶¶ 34–48) of the Settlement Agreement. Bosch's obligation to cooperate includes, among many other things, the duty to provide the following:

- Identifying Vehicles. After conducting a reasonable search, Bosch shall, to the best of its knowledge and within thirty (30) days of the Execution Date, identify (i) those Vehicles sold in the United States from February 13, 2007 through December 31, 2017 that contain Hydraulic Braking Systems sold by Bosch and (ii) those Vehicles sold in the United States from September 29, 2010 through December 31, 2017 that contain Electronic Braking Systems sold by Bosch. Bosch will use best efforts to complete this vehicle list with the data available to Bosch in the ordinary course of business, although Bosch does not sell vehicles and does not have complete knowledge of all regions where vehicles containing its products are sold by customers. *Id.* at ¶ 35.

- Identity of Individuals. Within fifteen (15) business days of Settlement Class Counsel's request, Counsel for Bosch shall provide Settlement Class Counsel with the identity of all current and former employees, directors and officers of Bosch who: (1) were interviewed and/or prosecuted by any Government Entity in connection with alleged price-fixing, bid rigging, and market allocation of Hydraulic Braking Systems and/or Electronic Braking Systems; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Hydraulic Braking Systems and/or Electronic Braking Systems; and/or (3) Bosch knows were disclosed to the DOJ as having knowledge of information relating to the DOJ's investigation into alleged antitrust violations with respect to Hydraulic Braking Systems and/or Electronic Braking Systems. *Id.* at ¶ 39.

- Transactional Data. Subject to meeting and conferring with End-Payor Plaintiffs as to the reasonable scope and timing of the production, within forty-five (45) days of Settlement Class Counsel's request, Bosch will use reasonable best efforts to complete the production of pre-existing transactional data in the format maintained in the ordinary course of business concerning Bosch's sales of (i) Hydraulic Braking Systems sold to Original Equipment Manufacturers, or other purchasers of Hydraulic Braking Systems, from February 13, 2005 through December 31, 2019; (ii) Electronic Braking Systems sold to Original Equipment Manufacturers, or other purchasers of Electronic Braking Systems, from September 29, 2008 through December 31, 2019. Bosch will produce transactional data only from existing electronic transactional databases, except that, to the extent Bosch has not recorded or maintained electronic transactional data for any period between February 13, 2005 through December 31, 2017 for Hydraulic Braking Systems, or September 29, 2008 through December 31, 2017 for Electronic Braking Systems, then Bosch will use reasonable efforts to produce existing hard copy records of sales transactions not recorded or maintained electronically in the existing electronic sales transactional database. *Id.* at ¶ 40

- Documents. Within forty-five (45) days of Settlement Class Counsel's request, Bosch will use reasonable best efforts to complete the production of the following Documents, other than the Protected Documents, including English translations to the extent they exist, and subject to the requirements of the

6

European General Data Protection Regulation, 2016 O.J. (L119) 1: (1) Documents provided to or seized by Government Entities relating to their investigation into alleged competition violations with respect to Hydraulic Braking Systems and Electronic Braking Systems; (2) non-privileged Documents concerning Hydraulic Braking Systems and Electronic Braking Systems collected and reviewed in connection with a communication, meeting, or agreement regarding Hydraulic Braking Systems and Electronic Braking Systems, by any employee, officer or director of Bosch with any employee, officer, or director of another manufacturer or seller of Hydraulic Braking Systems and Electronic Braking Systems, but that were not provided to or seized by Government Entities; (3) Documents sufficient to show Bosch's general methodology for determination of their prices for Hydraulic Braking Systems and Electronic Braking Systems; and (4) Documents concerning (i) requests for quotation ("RFQ"), (ii) bids submitted in response to RFQs, (iii) RFQ award notifications, and (iv) post-award price adjustments for Hydraulic Braking Systems and Electronic Braking Systems, including any Annual Price Reduction (APR) Documents, provided that for each (i) through (iv) were subject to competitor communications. As to non-privileged Documents in Bosch's possession, custody, or control that are not listed above, Bosch will consider in good faith any reasonable request by End-Payor Plaintiffs to collect and produce such Documents provided the request would not impose an undue burden on Bosch. *Id.* at ¶ 41.

- <u>Attorney Proffers and Witness Interviews</u>. Within thirty (30) days of Settlement Class Counsel's request:

  (a) Bosch's counsel will make themselves available at a mutually agreed location in the United States for up to two (2) meetings of one business day each to provide an attorneys' proffer of facts known to them. Thereafter, Bosch's counsel will make themselves available for reasonable follow-up conversations in connection with the attorney's proffers and will use best efforts to respond to questions posed by Settlement Class Counsel. Settlement Class Counsel will make reasonable best efforts to limit the cost of any proffers and interviews, including conducting them by videoconference where possible.

  (b) Bosch further agrees to make best efforts to make three (3) persons available for interviews and depositions, provide three (3) declarations or affidavits from the same persons, and make those persons available to testify at trial to the extent legally permissible. The interviews and depositions shall be conducted at a mutually agreed-upon location in the United States, and each deposition shall be limited to a total of seven (7) hours over one (1) day unless the deposition is in a language other than English, in which case the deposition shall be limited to a total of thirteen (13) hours over two (2) days. Settlement Class Counsel will make reasonable best efforts to limit the cost of any depositions or interviews, including conducting them by videoconference where possible. If the deposition or trial takes place in person outside the country of the witness's residence, Settlement Class Counsel and settlement class counsel for

Automobile Dealership Plaintiffs shall together reimburse half the reasonable travel costs incurred by such persons for time or services rendered. Such travel expenses may include economy airfare, meals, lodging and ground transportation, but not airfare for business or first class seats. Reimbursable expenses shall not exceed $1,500 per deponent or trial witness. If the interview and the above-described deposition occur during the same trip, the above-limitations will apply to that trip.

(c) In addition to its Cooperation obligations set forth herein, Bosch agrees to produce through affidavit(s), declaration(s), and/or at trial, in Settlement Class Counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any Documents or transactional data produced or to be produced by Bosch. Settlement Class Counsel agrees to use their best efforts to obtain stipulations that would avoid the need to call Bosch witnesses at trial for the purpose of obtaining such evidentiary foundations.

*Id.* at ¶ 43.

**Injunction:** Bosch has agreed for a period of twenty-four (24) months from the date of the entry of the final judgments in each respective Action not to engage in conduct that constitutes a *per se* violation of Section 1 of the Sherman Act (whether characterized as price fixing, market allocation, bid rigging, or otherwise) with respect to the sale of the Relevant Products. *Id.* at ¶ 28.

**Released Claims**: The Settlement Agreement releases only (i) Bosch; (ii) all of Bosch's past and present direct and indirect, parents, subsidiary companies and affiliates, including their respective predecessors, successors and assigns; and (iii) each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the persons and each of the persons and entities listed in (i) and (ii). *Id.* at ¶ 10. "Releasees" does not include any defendant in the MDL Litigation other than Bosch. *Id.*

The release does not include: (1) any claims made by direct purchasers of the Relevant Products as to such direct purchases; (2) any claims made by automotive dealerships that are indirect purchasers of the Relevant Products; (3) any claims made by any State, State agency, or

instrumentality or political subdivision of a State as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to the Relevant Products; (5) claims concerning any automotive part other than the Relevant Products; (6) claims under laws other than those of the United States relating to purchases of the Relevant Products made by any Releasor outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State. *Id.* at ¶ 24. Releasors shall not, after the date of the Settlement Agreement, seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless the Settlement Agreement is, for any reason, not finally approved or terminated. *Id.*

**ARGUMENT**

The Settlement Agreement is not only fair, reasonable, and adequate—resulting from extensive arm's length negotiations by experienced counsel—but also a thoughtfully conceived resolution of the proposed Settlement Classes' claims that maximizes its recovery and guarantees cooperation by Bosch's in the continued prosecution of EPPs' claims.

**I.     The Court Should Grant Preliminary Approval Because the Proposed Settlement Falls Well Within the Range of Possible Approval.**

It is well-established in the Sixth Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Griffin v. Flagstar Bancorp*, *Inc*., Case No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702, at *6 (E.D. Mich. Dec. 12, 2013) ("*Griffin*") (citing *UAW v. Gen*. *Motors*. *Corp*., 497 F.3d 615, 631 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions")); *see also IUE-CWA v. Gen*. *Motors Corp*., 238 F.R.D. 583, 593 (E.D. Mich. 2006).

9

Approval of a proposed class action settlement proceeds in two steps. First, the court grants preliminary approval to the settlement and provisionally certifies a settlement class. Second, after notice of the settlement is provided to the class and the court conducts a fairness hearing, the court may grant final approval of the settlement *See Ann. Manual for Complex Litigation (Fourth)*, § 21.63 (Updated May 2021) ("*Manual*"); *see also Bobbit v. Acad. of Reporting*, Case No. 07-10742, 2009 U.S. Dist. LEXIS 62365, at *1 (E.D. Mich. Jul. 21, 2009) (citing authorities).

A proposed settlement agreement should be preliminarily approved if "the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and [the settlement] appears to fall within the range of possible approval." *Manual* § 21.662; *see also Int'l Union*, *UAW v. Ford Motor Co*., Case Nos. 05-74730, 06-10331, 2006 U.S. Dist. LEXIS 70471, at *11 (E.D. Mich. Jul. 13, 2006). The district court's role in reviewing settlements "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Clark Equip. Co. v Int'l Union of Allied Indus. Workers of Am*., 803 F.2d 878, 880 (6th Cir. 1986).

In considering whether to grant preliminary approval, the court is not required to make a final determination of the adequacy of the settlement or to delve extensively into the merits of the settlement. *See In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig*., Case No. 1:01-cv-9000, 2001 U.S. Dist. LEXIS 26714, at *17 (E.D. Ohio Oct. 19, 2001) ("*Sulzer Hip*"). These inquiries are reserved for the final approval stage of the class settlement approval process. Nor will any class member's substantive rights be prejudiced by preliminary approval because the court's "primary objective at that point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 Herbert B. Newberg & Alba

10

Conte, NEWBERG ON CLASS ACTIONS § 13.10 (5th ed. updated June 2021) ("*Newberg*"); *see also*

*Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714 at *17. Consequently, courts generally engage only in a

limited inquiry to determine whether a proposed settlement falls within the range of possible

approval and thus should be preliminarily approved. *Sulzer Hip*, 2001 U.S. Dist. LEXIS 26714, at

*17–18 (preliminary approval may be based on "informal presentations" because of "substantial

judicial processes that remain") (quoting Manual § 30.41 at 236 (2004). Here, the settlement is

adequate and falls well within the range of possible approval given the financial risk and significant

investments needed to prosecute this inherently complex litigation.

## II.   **The Court Should Grant Preliminary Approval Because the Proposed Settlement Satisfies the Requirements of Rule 23(e) and Sixth Circuit Precedent.**

In the context of preliminary approval, Rule 23(e) directs interim class counsel to provide

the court with information sufficient to enable the court to determine that the settlement is fair,

reasonable, and adequate; that certification for purposes of settlement is warranted; and that notice

is justified because the court will likely grant final approval to the settlement. Sixth Circuit courts

have applied similar principles as part of their analysis of preliminary approval motions. All these

factors weigh in favor of preliminary approval here.

Under Rule 23, before authorizing EPPs to disseminate notice of the Settlement Agreement

to the Settlement Class, EPPs must demonstrate "that the Court will likely be able to: (i) approve

the [Settlement Agreement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment

on the [Settlement Agreement]." Fed. R. Ci*v.* P. 23(e)(1)(B). Under Rule 23(e)(2), a court may

only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and

adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). These factors overlap with the factors that courts in the Sixth Circuit have considered on preliminary and final approval, which include:

(1) the likelihood of success on the merits weighed against the amount and form of relief in the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. The Court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case.

*Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at \*46–47 (quotation marks and citations omitted).

A court is not required at the preliminary approval stage to determine whether it will ultimately approve the settlement, but only whether "the proposed settlement will *likely* earn final approval." *See* Fed. R. Civ. P 23(e)(1) advisory committee notes to 2018 amendment (emphasis added). As set forth in detail below, preliminary consideration of Rule 23(e) and Sixth Circuit factors support preliminary approval here.

**A.** **The Class Representatives and Class Counsel Have Adequately Represented the Classes (Rule 23(e)(2)(A)).**

The Sixth Circuit has articulated two criteria for determining adequacy of representation: "(1) [t]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Foundry Resins Antitrust Litig.,* 242 F.R.D. 393, 407 (S.D. Ohio 2007) ("*Foundry Resins*"), *abrogated on other grounds recognized in In re Behr Dayton Thermal Prods., LLC,* Case No. 3:08-CV-326, 2015 WL 13651286, at \*5 (S.D. Ohio Feb. 27, 2015) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 525 (6th Cir. 1976)).

EPPs submit that there are no conflicts between them and the proposed Settlement Classes because EPPs and members of the proposed Settlement Classes: (i) purchased or leased in the United States Vehicles containing the Relevant Products; and/or (ii) indirectly purchased the Relevant Products as a replacement part and have the same interest in establishing liability. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) ("*Corrugated Container*") (certifying settlement class and holding that "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes" (internal quotation marks and citation omitted)).

There can be no doubt that the Class Representatives and Interim Co-Lead Class Counsel have vigorously prosecuted the interests of the classes. Here, EPPs are represented by counsel with extensive experience in antitrust and class action litigation. The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class Counsel for EPPs in these Actions and all of the actions in the MDL Litigation, *see* Master File No. 2:12-md-2311, ECF No. 271, and has repeatedly appointed them as Settlement Class Counsel

13

as well. Across all related actions in the MDL Litigation, Interim Co-Lead Class Counsel have secured over $1.2 billion in settlements for the EPP classes—a sum that, in the aggregate, is the largest antitrust indirect purchaser settlement in history.

**B.      The Settlement Agreement Is the Result of Thorough Arm's-Length Negotiations (Rule 23(e)(2)(B)) and Is Fair, Adequate and Reasonable in the Opinion of Highly Experienced Class Counsel (Sixth Circuit's Third Factor).**

The judgment of proposed Settlement Class Counsel that the settlement is in the best interest of the proposed Settlement Class "is entitled to significant weight, and supports the fairness of the class settlement." *Sheick v. Auto Component Carrier LCC,* Case No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411, at *51 (E.D. Mich. Oct. 18, 2010) (quoting *IUE-CWA,* 238 F.R.D. at 597); *see also In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 525 (E.D. Mich. 2003). Courts give great weight to the recommendation of experienced counsel for the parties in evaluating the adequacy of a settlement.

"Preliminary approval of a proposed settlement is based upon the court's familiarity with the issues and evidence, as well as the arms-length nature of the negotiations prior to the proposed settlement, ensuring that the proposed settlement is not illegal or collusive." *Thacker v. Chesapeake Appalachia*, *L.L.C*., 259 F.R.D. 262 (E.D. Ky. 2009) (quoting *In re Dun & Bradstreet Credit Servs*. *Customer Litig*., 130 F.R.D. 366, 370 (S.D. Ohio 1990)). The Settlement Agreement here is the result of lengthy and hard-fought negotiations occurring over several months between counsel experienced in complex antitrust and consumer class action litigation.

Interim Co-Lead Class Counsel was well-informed about the facts and the strengths and weaknesses of the claims asserted when it negotiated the terms of the Settlement Agreement. Interim Co-Lead Class Counsel undertook a diligent and thorough investigation of the legal and factual issues posed by this litigation and consulted with experienced economists before negotiating the Settlement Agreement. "Courts presume the absence of

14

fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. ArvinMeritor, Inc.,* 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). There is nothing in the course of the negotiations or the substance of the settlement that discloses grounds to doubt its fairness—"[w]here a class settlement has been reached . . . after arm's length negotiation, conducted by capable counsel, it is presumptively fair." *Manual* § 21.662. Thus, there is also no "risk of fraud or collusion," the sixth factor in the Sixth Circuit analysis.

    **C.**     **The Proposed Settlement Provides the Best Possible Relief for the Classes.**

        **i.**     **The Proposed Settlement Achieves an Excellent Result for the Classes, Given the "Costs, Risks and Delay of Trial and Appeal" (Rule 23(e)(2)(C)(i) and Sixth Circuit's First and Second Factors), and Treats Class Members Equitably (Rule 23(e)(2)(D)).**

Antitrust class actions are "arguably the most complex action[s] to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.,* Case No. 08-MD-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) (quoting *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)).

Additionally, Bosch would assert various defenses, and a jury trial might well turn on close questions of proof, many of which would be the subject of complicated expert testimony, particularly with regard to damages, making the outcome of such trial uncertain for both parties. *See*, *e.g*., *Cardizem*, 218 F.R.D. at 523 (in approving settlement, noting that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery" and that "no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation"); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *56 (noting the "undeniable inherent risks" in antitrust class action litigation including "whether the class will be certified and upheld on appeal, whether the conspiracy as alleged in the Complaint

can be established, whether Plaintiffs will be able to demonstrate class wide antitrust impact and ultimately whether Plaintiffs will be able to prove damages").

Moreover, an appeal is nearly certain to follow regardless of the outcome of trial. This creates additional risk, as judgments following trial may be overturned on appeal. Even if class members were willing to assume all of the litigation risks, the passage of time would introduce still more risk in terms of appeals and possible changes in the law that would, in light of the time value of money, make future recoveries less valuable. *See, e.g., In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 536 (3d Cir. 2004) ("[I]t was inevitable that post-trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class"); *In re Rent-Way Sec. Litig.,* 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003) ("[A] future recovery, even one in excess of the proposed Settlement, may ultimately prove less valuable to the Class than receiving the benefits of the proposed Settlement at this time"). Here, "the certain and immediate benefits to the Class represented by the Settlement outweigh the possibility of obtaining a better result at trial, particularly when factoring in the additional expense and long delay inherent in prosecuting this complex litigation through trial and appeal." *Cardizem,* 218 F.R.D. at 525.

Against this background, this Settlement represents an excellent result for the members of the proposed Settlement. Bosch's $2,242,000.00 payment provides for significant compensation to the proposed Settlement Classes that will be available years earlier than would be the case if litigation against Bosch continued through trial and appeal.

Finally, prior to the Court's holding a final approval hearing concerning this settlement, EPPs intend to submit for the Court's approval a plan of allocation substantially identical to the

16

plan the Court has approved on previous occasions. *See, e.g., Heater Control Panels*, Case No. 2:12-cv-00403 (E.D. Mich.), ECF No. 302.

### ii.    The Settlement Does Not Propose An Award of Attorney's Fees At This Time (Rule 23(e)(2)(C)(iii)).

The Settlement Agreement permits Settlement Class Counsel, at a time to be determined in its sole discretion after preliminary approval, to submit an application or applications to the Court for an award of attorneys' fees not in excess of one-third of the Settlement Fund, plus reimbursement of expenses and costs incurred in connection with prosecuting the Action, plus interest on such attorneys' fees, costs, and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid), as may be awarded by the Court. The Court has on four previous occasions approved Interim Co-Lead Class Counsel's requests for fee awards, on each occasion finding that "[t]he award requested is within the range of fee awards made by courts in this Circuit." *See* Case No. 2:12-cv-00403, ECF No. 320 (Sept. 23, 2020) ⁋ 7; Case No. 2:12-cv-00103, ECF No. 626 (Nov. 7, 2018) ⁋ 8; ECF No. 578 (Jul. 10, 2017) ⁋ 8; ECF No. 545 (Dec. 5, 2016) and ECF No. 498 (June 20, 2016). Interim Co-Lead Class Counsel will seek an attorneys' fee award of no more than one-third of the Bosch settlement plus any reimbursement of expenses and costs and incentive awards awarded by the Court in connection with this settlement.

### iii.    EPPs Have Attached the Only Agreement in Connection with the Proposed Settlement (Rule 23(e)(2)(C)(iv)).

EPPs have attached the Settlement Agreement entered into between the parties as Exhibit 1. There are no additional agreements between the parties concerning the settlement for which EPPs seek approval.[3]

---

[3] The Sixth Circuit's fourth factor, "the amount of discovery engaged in by the parties," weighs in favor of settlement because EPPs have benefited from significant informal discovery

**III.**     **The Proposed Settlement Classes Should Be Provisionally Certified Pursuant to Rule 23.**

The Manual notes the propriety of certifying a class solely for purposes of settlement, *see Manual* § 21.612, and courts in this Circuit routinely provisionally approve a proposed settlement class before deciding plaintiffs' motion for class certification. *See, e.g.*, *In re Delphi Corp. Sec. Derivatives & ERISA Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008) (granting final approval to both ERISA and Securities settlement classes, noting the court's earlier, preliminary approval of the settlement classes granted prior to a hearing on defendants' motions to dismiss); *Cardizem*, 218 F.R.D. at 516–17, 530 (granting final approval of proposed settlement, noting its earlier preliminary approval of both the proposed settlement class and the proposed settlement agreement granted prior to class certification and prior to hearing on motions to dismiss). A court may grant provisional certification where, as here, the proposed Settlement Classes satisfy the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See In re Packaged Ice Antitrust Litig.*, Case No. 08-md-01952, U.S. Dist. LEXIS 140235, at *27–28 (E.D. Mich. Sept. 2, 2010).

While, in the context of a litigated class certification motion, a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350-351, 131 S. Ct. 2541 (2011), even in that context "the requisite 'rigorous analysis' of the record and consideration of the merits must be focused on and limited to the question whether the Rule's requirements have been established." *Cason-Merenda v. VHS of Mich., Inc.,* 296 F.R.D. 528 (E.D. Mich. 2013), *vacated,* Case No. 13-0113, 2014 U.S. App. LEXIS

---

obtained from a cooperating Defendant, as noted previously. This discovery has informed the settlement counsel's opinion that it is fair, reasonable, and adequate. The Sixth Circuit's fifth factor, "reaction of absent class member," is not yet relevant as the Court has not yet authorized notice of the proposed settlement. The Sixth Circuit's seventh factor, "the public interest," weighs in favor of approval for the reasons described above. *See supra,* § 1.

4447 (6th Cir. Jan. 6, 2014), *reinstated in full,* Case No. 06-15601, 2014 U.S. Dist. LEXIS 29447

(E.D. Mich. Mar. 7, 2014)) (citing *In re Whirlpool Corp. Front-Loading Washer Prods. Liab.*

*Litig.,* 722 F.3d 838, 851-52 (6th Cir. 2013) ("*Whirlpool*")).Permissible inquiry into the merits of

plaintiffs' claims at the class certification stage is limited:

> Rule 23 grants courts no license to engage in free-ranging merits inquiries at the
> class certification stage. Merits questions may be considered to the extent—but
> only to the extent—that they are relevant to determining whether the Rule 23
> prerequisites for class certification are satisfied.

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–95 (2013) (citing *Dukes*,

131 S. Ct. at 2552 n.6). "In other words, district courts may not turn the class certification

proceedings into a dress rehearsal for the trial on the merits." *Whirlpool*, 722 F.3d 838, 851–52

(internal quotation marks and citation omitted). Here, as demonstrated below, even under a

"rigorous analysis," the requirements of Rule 23 are easily met.

### A.   The Proposed Settlement Classes Meet the Requirements of Rule 23(a).

Horizontal price fixing class actions are routinely certified by courts in this District and

elsewhere. EPPs' allegations of "a per se violation of the antitrust laws are exactly the kind of

allegations which may be proven on a class-wide basis through common proof." *In re Southeastern*

*Milk Antitrust Litig.*, Case No. 2:09-md-1000, U.S. Dist. LEXIS 94223, at *35 (E.D. Tenn. Sept.

7, 2010). "Courts have held that the existence of a conspiracy is the predominant issue in price

fixing cases, warranting certification of the class even where significant individual issues are

present." *Id.* at *33 (internal quotation marks and citations omitted).

### i.   The Proposed Settlement Classes are so Numerous That It Is Impracticable to Bring All Class Members Before the Court.

No magic number is required to satisfy the numerosity requirement of Rule 23(a)(1). *Miller*

*v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). A class representative need only

show that joining all members of the potential class is extremely difficult or inconvenient. *Golden*

*v. City of Columbus*, 404 F.3d 950, 965 (6th Cir. 2005). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Foundry Resins*, 242 F.R.D. at 403 (citing *Bacon v. Honda of America Mfg.*, *Inc.*, 370 F.3d 565, 570 (6th Cir. 2004).

Here, the proposed Settlement Classes consists of all persons and entities that (1) from February 13, 2007 through December 31, 2017, purchased or leased a new Vehicle in the United States not for resale which included one or more Hydraulic Braking System(s) as a component part or indirectly purchased one or more Hydraulic Braking System(s) as a replacement part, or (2) from September 29, 2010 through December 31, 2017 purchased or leased a new Vehicle in the United States not for resale, which included one or more Electronic Braking System(s) as a component part or indirectly purchased one or more Electronic Braking System(s) as a replacement part, which were manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of a Defendant. *See* Settlement Agreement at ¶ 12. Within this period, it is beyond dispute that millions of the Relevant Products not for resale or indirectly purchased the Relevant Products as a replacement part. As a result of the large number of putative class members and their geographic distribution throughout the United States, joinder is highly impracticable if not impossible.

### ii. End-Payor Plaintiff Class Representatives and the Proposed Settlement Classes Share Common Legal and Factual Questions.

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). While Rule 23(a)(2) speaks of questions of law or fact in the plural, "there need be only one common question to certify a class." *Whirlpool,* 722 F.3d at 853; *see also, e.g.,*

*Cason-Merenda,* 296 F.R.D. at 536 (one common question of law or fact is sufficient); *Griffin,*
2013 U.S. Dist. LEXIS 173702, at \*17 (same).

This prerequisite is readily satisfied here because "[a]ntitrust price-fixing conspiracy cases,
by their nature, deal with common legal and factual questions about the existence, scope and effect
of the alleged conspiracy." *In re Aluminum Phosphide Antitrust Litig.*, 160 F.R.D. 609, 613 (D.
Kan. 1995). Thus, in price-fixing cases, courts "have consistently held that the very nature of a
conspiracy antitrust action compels a finding that common questions of law and fact exist." *In re
Dynamic Random Access Memory* (*DRAM*) *Antitrust Litig.*, Case No. 02-md-1486, 2006 U.S. Dist.
LEXIS 39841, at \*29 (N.D. Cal. June 5, 2006); *see also* Newberg § 3:19 (explaining that courts
routinely define common questions of fact broadly, "such as 'did the defendants in fact collude in
setting prices?'").

Here, EPPs have identified the following issues common to the proposed Settlement
Classes:

- Whether the Defendants engaged in a combination and conspiracy among
themselves to fix, raise, maintain, or stabilize the prices of the Relevant
Products sold in the United States;

- Whether the Defendants engaged in a combination and conspiracy among
themselves to rig bids quoted to customers of the Relevant Products sold
in the United States;

- Whether the Defendants engaged in a combination and conspiracy to
allocate customers and the markets for the Relevant Products sold in the
United States;

- The duration of the alleged illegal conspiracy; and

- Whether Defendants' conduct resulted in unlawful overcharges on the
prices of the Relevant Products.

Any one of these substantive issues would, standing alone, establish the requisite
commonality under Rule 23(a)(2).

### iii. End-Payor Plaintiff Class Representatives' Claims Are Typical of the Claims of the Members of the Proposed Settlement Classes.

Third, Rule 23(a) requires typicality of the class representatives' claims. *See* Fed. R. Civ. P. 23(a)(3). "The [typicality] requirement is not onerous," *Int'l Union*, *UAW v. Ford Motor Co*., 2006 U.S. Dist. LEXIS 70471, at *54, and courts liberally construe it. *See Foundry Resins*, 242 F.R.D. at 403. "In the antitrust context, typicality is established when the named plaintiffs and all class members allege[] the same antitrust violation by defendants." *Cason-Merenda*, 296 F.R.D. at 537 (quoting *Foundry Resins*, 242 F.R.D. at 405). "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members." *Griffin*, 2013 U.S. Dist. LEXIS 173702, at *17–18 (quotation marks and citation omitted).

Because the EPP Class Representatives and the members of the proposed Settlement Classes believe that they are all victims of the alleged conspiracy to fix prices, rig bids, and allocate the market and customers for Hydraulic Braking Systems, Rule 23(a)(3) is satisfied. *See, e.g., Cason-Merenda*, 296 F.R.D. at 537 (finding typicality where "the claims of the named Plaintiffs and those of the remaining members of the proposed class all arise from the same conspiracy and are based on the same theory of liability under the Sherman Act") (internal quotation marks and citation omitted).

### iv. Proposed Settlement Class Counsel and End-Payor Plaintiff Class Representatives Will Fairly and Adequately Protect the Interests of the Proposed Settlement Classes.

The Proposed Settlement satisfies the requirement of Rule 23(a) that the representative parties "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), for the same reasons described above. *See supra* § II.A. The Court appointed Cotchett, Pitre & McCarthy, LLP, Robins Kaplan LLP, and Susman Godfrey L.L.P. as Interim Co-Lead Class

Counsel in these actions and the other automotive parts antitrust actions, *see* Case No. 2:12-md-02311, ECF No. 271, and should appoint them as Settlement Class Counsel here as well.

**B.    The Proposed Settlement Classes Meet the Requirements of Rule 23(b)(3).**

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem Prods.*, *Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("*Amchem*"); *see also In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008). With respect to both requirements, the Court need not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citations omitted).

**i.    Common Questions of Law and Fact Predominate.**

("Rule 23(b)(3) does not mandate that a plaintiff seeking class certification prove that each element of the claim is susceptible to classwide proof." *Whirlpool,* 722 F.3d at 859. Instead, "'[a] claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individualized position." *Foundry Resins,* 242 F.R.D. at 408 (quoting *In re Cardizem CD Antitrust Litig.,* 200 F.R.D. 297, 307 (E.D. Mich. 2001)). Common questions need only predominate; they need not be dispositive of the litigation. *Id.* (citation omitted). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Cason-Merenda,* 296 F.R.D. at 535 (quoting *Powers v. Hamilton Cty. Pub. Def. Comm'n,* 501 F.3d 592, 619 (6th Cir. 2007)). As pertinent to the EPPs' request here to provisionally certify the proposed Settlement Classes under

Rule 23(b)(3), the Supreme Court instructed that "Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen,* 568 U.S. at 459 (emphasis in original).

Because the EPPs allege conduct that injured the members of the proposed Settlement Classes, issues common to those members—for example, the existence and scope of the alleged price-fixing conspiracy among Defendants and the market impact of Defendants' conspiracy—predominate over any individual questions, and therefore class treatment of the claims is appropriate for purposes of this settlement. *See Amchem,* 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."); *In re Vitamins Antitrust Litig.,* 209 F.R.D. 251, 264 (D.D.C. 2002) ("[A]s a rule, the allegation of a price-fixing conspiracy is sufficient to establish predominance of common questions[.]") quoting Newberg on Class Actions § 18.28 at 18-98 (3d ed. 1992)). This Circuit has also held that "[p]redominance is a test readily met in certain cases alleging . . . violations of the antitrust laws, because proof of the conspiracy is a common question that is thought to predominate over the other issues of the case." *In re Scrap Metal Antitrust Litig.,* 527 F.3d at 535 (quoting *Amchem,* 521 U.S. at 625).[4] Furthermore, here the evidence will prove a violation as to one Settlement Class Member is common to the others and will be sufficient to prove it as to all—the anticompetitive conduct is

---

[4] Other courts have recognized that the existence and scope of an alleged antitrust conspiracy are matters susceptible to class-wide proof, and thus tend to support a finding that common issues predominate over individual ones as to at least the first element of an antitrust conspiracy claim. *See, e.g., Cordes & Co. Financial Services, Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 105 (2d Cir. 2007); *Blades v. Monsanto Co.,* 400 F.3d 562, 572 (8th Cir. 2005); *Foundry Resins,* 242 F.R.D. at 408.

not dependent on the separate conduct of the individual members of the proposed Settlement. *See Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *43.

This is true even if there are individual state law issues, as long as the common issues still outweigh the individual ones; e.g., as long as a common theory can be alleged as to liability and impact that can be pursued by the class. *See*, *e.g.*, *Whirlpool*, 722 F.3d at 861 ("[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members" (internal quotation marks and citation omitted)); *Scrap Metal*, 527 F.3d at 535 (where common issues determine liability, fact that damages calculation may involve individualized issues does not defeat predominance). Issues common to the proposed Settlement Classes predominate in this case. These common issues of liability and impact predominate over any individual issues and strongly support provisional certification of the proposed Settlement Classes.

## ii. A Class Action Is the Superior Method to Adjudicate These Claims.

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. The superiority of class certification over other available methods is measured by consideration of certain factors, including: the class members' interests in controlling the prosecution of individual actions; the extent and nature of any litigation concerning the controversy already begun by or against class members; the desirability of concentrating the litigation of various claims in the particular forum; and the likely difficulties in managing a class action. Rule 23(b)(3); *see Whirlpool*, 722 F.3d at 861.

Courts consistently hold that class actions are a superior method of resolving antitrust claims like those alleged here. *See In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004) (noting that individual litigation of antitrust claims would be "grossly inefficient, costly, and time consuming"). Here, the interests of the members of the

25

proposed Settlement Classes in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *Cardizem*, 200 F.R.D. at 325–26 (finding that class action is superior because it ensures fair and efficient adjudication). Untold numbers of members of the proposed Settlement Classes purchased or leased new Vehicles containing the Relevant Products as a component part or indirectly purchased the Relevant Products as a replacement part for a Vehicle during the settlement class period; resolving these claims in the context of a class action would conserve both judicial and private resources and would hasten the class members' recovery. *See*, *e.g.*, *Foundry Resins*, 242 F.R.D. at 411–12 ("Repeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results.").[5]

## IV.    Notice to the Settlement Class Members.

As set forth in the Settlement Agreement, "End-Payor Plaintiffs, at a time to be decided in their sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgments contemplated by this Agreement to all Settlement Class Members identified by End-Payor Plaintiffs ('Notice Motion')." Settlement Agreement at ¶ 20. "The Notice Motion shall include a proposed form of, method for, and date of dissemination of notice." *Id.* To mitigate the costs of notice, End-Payor Plaintiffs shall endeavor, if practicable, to disseminate notice of this settlement with the two other settlements filed concurrently

---

[5] Another Rule 23(b)(3) criterion is manageability. The Supreme Court has made clear that manageability need not be considered where, as here, a class is being certified for settlement purposes. *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial").

herewith. Accordingly, with the Court's permission, proposed Settlement Class Counsel will submit a motion for authorization to disseminate a Notice Motion at a later date.

The Proposed Final Judgment Approving the Settlement Agreement Between End-Payor Plaintiffs and Bosch and Entering Dismissal With Prejudice as to Bosch is attached hereto as Exhibit 2.

## CONCLUSION

For the foregoing reasons, EPPs respectfully request that the motion for preliminary approval be granted and that the Court enter the accompanying Proposed Order:

1. Preliminarily approving the Settlement Agreement;

2. Provisionally certifying the proposed Settlement Classes;

3. Staying the proceedings against Bosch (as defined in the Settlement Agreement) in accordance with the terms of the Settlement Agreement;

4. Authorizing End-Payor Plaintiffs to provide notice of the Settlement Agreement to Settlement Class members at a later date, in a form to be approved in advance by this Court; and

5. Appointing Interim Co-Lead Class Counsel for the EPPs as Settlement Class Counsel for this settlement.

Dated: August 27, 2021

*/s/ Elizabeth T. Castillo*
Adam J. Zapala
Elizabeth T. Castillo
Reid W. Gaa
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
rgaa@cpmlegal.com

William V. Reiss
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600

New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
WReiss@RobinsKaplan.com

Marc M. Seltzer
Steven G. Sklaver
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Terrell W. Oxford
Chanler Langham
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
toxford@susmangodfrey.com
clangham@susmangodfrey.com

*Interim Co-Lead Class Counsel for the Proposed
End-Payor Plaintiff Classes*

E. Powell Miller
Devon P. Allard
**THE MILLER LAW FIRM, P.C.**
The Miller Law Firm, P.C.
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
epm@millerlawpc.com
dpa@millerlawpc.com

*Interim Liaison Counsel for the Proposed End-
Payor Plaintiff Classes*

28

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2021 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Elizabeth T. Castillo*
Elizabeth T. Castillo